# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 30, 2000 Session

## JENNIFER PURCELL THOMAS v. STEPHEN ALEXANDER THOMAS

**A Direct Appeal from the Chancery Court for Shelby County**
**No. D27019-2     The Honorable Floyd Peete, Chancellor**

---

**No. W1999-00284-COA-R3-CV - Filed November 13, 2000**

---

In this divorce case, the trial court, among other things, made a division of marital property, awarded Wife alimony *in solido,* made an award of child support, and ordered payments of various debts by the parties. Both parties have appealed presenting issues concerning the court's above stated actions.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated in Part, Affirmed in Part and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and JOHN EVERETT WILLIAMS, J., joined.

David E. Caywood, Stacy A. Ingle, Memphis, For Appellant, Jennifer Purcell Thomas

Dorothy J. Pounders, Memphis, For Appellee, Stephen Alexander Thomas

### OPINION

This is an appeal of the final decree of the Chancery Court of Shelby County, Tennessee, granting plaintiff/appellant, Jennifer Purcell Thomas ("Wife"), a final divorce from defendant/appellee, Stephen Alexander Thomas ("Husband"), presenting issues dealing with the division of marital property, alimony, and child support.

On March 21, 1976, Wife filed a complaint for divorce, and Husband responded with an Answer and Counterclaim. On December 3, 4, 8, and 9, 1997, a non-jury trial was held on the original complaint filed by Wife and the counter-complaint filed by Husband, answers thereto, the testimony of Wife and Wife's witnesses, the testimony of witnesses for Husband, exhibits filed in the cause, statements of counsel and the entire record. Husband did not testify at the trial. At the end of the trial, counsel for both parties and the court agreed that closing arguments would be submitted on brief. On January 8, 1998, Wife filed a motion to join Clinton Cecil Thomas,

Husband's father, as a party defendant. On June 1, 1998, Wife filed a petition for civil contempt alleging that Husband was in arrears in his *pendente lite* support in the amount of $11,725.00 and that he had not paid any private school tuition for the 1998-99 school year for the parties' three minor children. Wife averred that Husband's failure to pay support and tuition were violations of the trial court's orders. On September 21, 1998, the trial court entered an order denying Wife's motion to join Clinton Cecil Thomas as a party defendant. On October 21, 1998, the trial court entered a final decree of absolute divorce. On November 10, 1998, the trial court entered an order correcting a previous order and dismissing Wife's petition for civil contempt against Husband with prejudice over Wife's objection. Both parties filed motions to alter or amend the judgment. On April 5, 1999, the trial court entered an order on both parties' motions to alter or amend, *inter alia,* clarifying Wife's award of alimony *in solido* and the judgment with regard to payment of private school tuition. Thereafter, both parties filed notices of appeal. This Court entered an order designating Wife to be appellant and Husband to be appellee.

Wife presents seven issues for review as stated in her brief:

I. Whether the trial court erred in calculating Mr. Thomas' child support based upon the evidence presented at trial?

II. Whether the trial court erred in classifying the ownership interest in LADS as Mr. Thomas' separate property pursuant to T.C.A. § 36-4-121?

III. Whether the trial court's award of one-half of the future proceeds in LADS as alimony *in solido* should be a division of property, or in the alternative, a sum certain?

IV. Whether the trial court erred in denying Mrs. Thomas' motion to join Clinton C. Thomas as a party defendant?

V. Whether the trial court erred in dismissing Mrs. Thomas' petition for civil contempt with prejudice?

VI. Whether the trial court erred in only awarding Mrs. Thomas $25,000.00 in attorney's fees?

VII. Whether the trial court erred in failing to assign the parties' marital liabilities?

Husband presents issues for review as follows:

I. Whether the trial court erred in calculating Stephen Thomas' child support obligation based on $25,000 income where the evidence at

trial established his inability to earn income in an amount greater than $20,000.00?

II. Whether the trial court erred in its classification of the Eaton Street residence as marital property when it was acquired in the same manner as Stephen Thomas' separate property?

III. Whether the trial court erred in the classification and amount of alimony?

IV. Whether the trial court erred in awarding Jennifer Thomas $25,000.00 in attorney's fees where Jennifer Thomas' need was no greater than Stephen Thomas' and Stephen Thomas had no ability to pay?

V. Whether the trial court erred in failing to credit Stephen Thomas $10,400.00 for the loan he obtained to pay the children's private school tuition?

VI. Whether the trial court erred in refusing to join Clint Thomas as a third-party defendant where he has no liability or obligation to either or the parties?

VII. Whether the trial court erred in dismissing Jennifer Thomas's petition for civil contempt with prejudice?

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Tenn. R. App. P. 13(d).

The trial court made specific findings of facts incorporated by reference into the decree:

1. The parties married on December 21, 1984, the final separation occurred on December 26, 1995, the parties lived together in the marital relationship for eleven (11) years and had been married thirteen (13) years at the time of trial.

2. The youngest child of the parties, Ivy is, at the time of trial, developmentally impaired by Williams Syndrome, a genetic disease that is attributed to neither party, and is likely to remain so.

-3-

3.  At the time of the marriage, Husband had a history of mental illness, sufficiently severe to require confinement in a psychiatric ward in the year preceding the marriage, had a history of alcohol and drug abuse and was completely financially dependent on his father, all of which was known to Wife prior to marriage.

4.  Husband suffered both before and throughout the marriage with bouts of addictive behavior and mental illness, and Husband has often required prescription medication.

5.  Husband, both prior to and periodically throughout the marriage, required psychotherapy to deal with his drug and alcohol abuse and mental illness.

6.  At the time of trial, Husband's prognosis was only fair, and it is unlikely that Husband will ever sustain gainful employment to the extent that he is going to make a lot of money.

7.  At the time of the marriage, Wife was employed as a school teacher, but, since the birth of the parties first child Grace in March 1985, Wife has not been gainfully employed outside the home but was a homemaker and parent.

8. Mrs. Thomas must now devote the majority of her time and energy to the care and upbringing of the parties' youngest daughter, Ivy.

9.  At the time of the marriage, Husband was employed in the mail room at one of his father's appliance stores and later doing clerical work and running errands for LADS, a Thomas family business; after a month-long period of confinement in the psychiatric ward in 1989, Husband decided to complete his college education and attended the University of Memphis, at his father's expense, and received a bachelor's degree in social work in 1990 or 1991.  After receiving his degree, he was employed in a juvenile detention center, then as a technician in a psychiatric ward at St. Francis Hospital, then as a child abuse caseworker for the Tennessee Department of Human Services; he resigned his employment as a caseworker for the Tennessee Department of Human Services following his institutionalization for drug addiction at the Hazelden Clinic in 1995, later became employed as a social worker for St. Peter's Villa for a short time and had resumed his employment as a technician at St. Francis Hospital at the time of the separation.

10. Husband has limited employability.

11. The standard of living enjoyed by the parties during the marriage was made possible solely by gifts from Husband's parents, who provided the house they live in and the cars they drove, who paid their utility bills, who took them on vacations to Europe and Hawaii, who paid Husband's medical expenses and his debts and who paid for their children's private education.

12. Following the marriage, Husband's father provided the parties a residence rent free, provided automobiles for the parties' use without cost, paid certain of the parties living expenses, and, as the children of the parties reached school age, paid the expenses of their private school education until Husband received his college degree in 1990 or 1991. Husband's father provided him employment and, afterward, Husband's father continued to subsidize the parties' standard of living by causing Husband to be paid a salary by LADS, although Husband was employed full-time elsewhere and preformed no services for LADS.

13. In addition to providing those benefits above-mentioned, each of Husband's parents, in an effort to reduce their taxable estates, made a practice of making annual gifts to each of the parties during the marriage in the maximum amount allowable under tax laws, and the sums comprising these gifts were accumulated and applied to the acquisition of certain properties owned by Husband's father on extremely favorable terms, generally at "cost;" it was the intention of Husband's parents in making these gifts to confer a benefit upon their child and heir, the gifts to Wife being made in consequence of and as an accommodation to the tax laws.

14. The conveyance of property by Husband's father to Husband in exchange for the accumulated gifts above-mentioned coincided with the birth of the children of the parties and the consequent increase in the parties' living expenses; Husband's father's conveyance to Husband of his grandmother's former house in Florida, which had become rental property, coincided with the birth of the parties' first child Grace, while Husband's father's conveyance to Husband of the commercial rental property on Park Avenue in Memphis coincided with the birth of the parties' second child, Ellen, and in making such conveyance it was Husband's father's intention to provide an income stream from which Husband could support his family.

15.  The parties occupied the marital residence located on Eaton Street in Memphis from the time of the marriage, living there rent free until 1992, when the property was conveyed and it has been found that this property is marital property.

16.  LADS is a Tennessee general partnership formed by Husband's father for the exclusive benefit of his four (4) children and was an outgrowth of Husband's father's individual activities in developing commercial real property for use by the Tandy Corporation, by whom Husband's father had been employed following the sale of his own business to the Tandy Corporation around the time of the marriage; at the time of trial, the partnership owned certain improved real properties and certain securities, and, from its inception, the business of the partnership had always been conducted by Husband's father in the capacity of General Manager.

17.  OB Development Company, Inc. is a Tennessee corporation formed by Husband's father for the exclusive benefit of his four (4) children, the sole business of which is the development of a specific residential subdivision in the State of Mississippi and all of which is administered solely by Husband's father.

18.  With the exception of the marital residence, neither party made any material contribution to the upkeep, preservation and maintenance of any of the properties acquired by the application of the accumulate gifts above-mentioned, and neither party made any contribution whatever, direct or indirect, to the management, operation or administration of the business of LADS or OB Development Company. Inc.

19.  At the time of the divorce, the parties had acquired the following assets using the gift monies from Husband's father:

> a.  The marital residence located at 749 Eaton Street, Memphis Tennessee;
>
> b.  Commercial rental property at 3906 Park Avenue, Memphis Tennessee;
>
> c.  Ownership interest in LADS, a Tennessee General Partnership;

> d. Ownership interest in OB Development, a Tennessee General Partnership;
>
> e. Note receivable from LADS;
>
> f. Individual Retirement Account of Stephen Thomas.

20. All of the above-mentioned assets were accumulated during the marriage.

21. All decisions concerning the acquisitions of properties in exchange for the accumulated gifts above-mentioned, all decisions concerning the formation, operation and administration of the business of LADS and OB Development Company, Inc. were made by Husband's father.

22. At the time of the separation, the parties household income consisted of Husband's earnings as a technician at St. Francis Hospital, monthly rental income from the Park Avenue property, monthly distributions of profits by LADS and a monthly salary paid by LADS to Husband, for which Husband rendered no services, and, with the exception of Husband's earnings above-mentioned, none of the income was produced by any effort on the part of either party, nor was any property which produced income acquired by or through any effort on the part of either party; as between Husband and his father, any and all decisions affecting continuation of the income stream from LADS were made by Husband's father.

23. At the time of the trial, neither party owned or controlled any liquid assets. Husband's father declined to make any further distributions of cash to Husband or to Wife, or to Husband which might benefit Wife.

24. Wife enjoyed, during the marriage, a standard of living measured by the Husband's father rather than the Husband. Wife knew or should have known at the time of the marriage that Husband was substantially impaired in his abilities as a breadwinner.

25. Stephen A. Thomas [Husband] conspired with Clinton C. Thomas [Husband's father] and dissipated the marital estate in the amount of $67,000.

The trial court ordered in pertinent part:

b. As a division of marital property, pursuant to T.C.A. § 36-4-121, Wife shall be awarded the Eaton Street property which is the marital residence, and one-half (½) of Husband's IRA account at Union Planters Bank.

c. As alimony *in solido*, Wife shall be awarded the commercial rental property on Park Avenue, Memphis, Tennessee. As additional alimony *in solido,* Wife is awarded one-half (½) of Husband's proceeds from his distribution of profits from LADS for a period of ten (10) years.

d. Husband's portion of the Individual Retirement Account in the amount of $10,076.10 shall be awarded to Wife and shall be applied to Husband's child support arrearages. The remaining arrearages in the amount of $7,441.68 which includes interest through August 31, 1998, shall be reduced to judgment, subject to execution.

e. Wife shall be awarded custody to the parties' three (3) minor children. Husband shall have visitation with the minor children one weekend per month so long as he resides outside of Tennessee.
In the event of his return to Tennessee, visitation shall be every other weekend, alternating holidays and up to two weeks non-consecutively in the summer.

f. Husband shall pay child support to Wife, with the child support based upon Husband's earning capacity of $25,000.00 per year. Therefore, Husband shall pay child support to Wife in the amount of $692.00 per month beginning September 1, 1998. Husband shall pay to Wife, as additional child support, 41% of Husband's stock dividends and 41% of Husband's proceeds in the distribution of profits from LADS.

g. Husband shall provide sufficient dependent healthcare insurance coverage for the minor children.

h. Husband's partnership interest in LADS and his stock in OB Development Co., Inc. is awarded to Husband as his separate property.

i. Husband shall not conspire or consort with any party in an attempt to impede or obstruct the distribution of these funds or disobey the Orders of this Court.

-8-

j.  Husband shall pay to Wife and Wife's counsel the sum of $25,000.00 as a portion of Wife's attorney fees.

k.  The Court costs shall be assessed against Husband, for all of which let execution issue.

We will consider Wife's issues II and III, regarding the classification of the ownership interest in LADS and the award and classification of alimony, together with Husband's issues II and III, addressing classification of the Eaton Street property and the amount and classification of alimony.  Wife takes issue with the trial court's classification of the one-quarter interest in LADS as separate property belonging to Husband.  Wife asserts that during the marriage the parties used gift funds from Husband's parents to capitalize LADS and other assets acquired during the marriage. Wife asserts that since these assets were treated as marital property during the marriage, they should be treated as marital property in the classification of property.    Husband's issue II addresses whether the trial court erred in its classification of the Eaton Street residence as marital property when it was acquired in the same manner as Husband's separate property. We consider these issues together as they all address the classification and division of property by the trial court.

In ***Batson v. Batson*** 769 S.W.2d 849 (Tenn. Ct. App. 1988) the court said:

> Tennessee is a "dual property" jurisdiction because its divorce statutes draw a distinction between marital and separate property. Since Tenn.Code Ann. § 36-4-121(a) (Supp.1988) provides only for the division of marital property, proper classification of a couple's property is essential.  See 3 Family Law and Practice § 37.08[1] (1988).  Thus, as a first order of business, it is incumbent on the trial court to classify the property, to give each party their separate property, and then to divide the marital property equitably.  See 2 H. Clark, The Law of Domestic Relations in the United States § 16.2, at 183-84 (2d ed. 1987).
>
> Tenn.Code Ann. § 36-4-121(b) contains the ground rules for classifying property, and little elaboration is needed beyond the statute itself.   Tenn.Code Ann. § 36-4-121(b)(2) defines 'separate property' as:
>
>> all real and personal property owned by a spouse before marriage;  property acquired in exchange for property acquired before marriage;  income from and appreciation of property owned by a spouse before marriage  except  when  characterized  as  marital

-9-

> property under subdivision (b)(1); and property acquired by a spouse at any time by gift, bequest, devise or descent.

> This Court has construed this section to mean that gifts by one spouse to another of property that would otherwise be classified as marital property are the separate property of the recipient spouse. This Court has also found that the portion of a spouse's pension or other retirement benefit attributable to creditable service prior to the marriage is separate property.

> Tenn.Code Ann. § 36-4-121(b)(1) defines 'marital property' as:

>> all real and personal property, both tangible and intangible, ***acquired by either or both spouses during the course of the marriage*** ... including income from, and any increase in value during the marriage, of property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of a vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

*Id.* at 856 (emphasis added). In addition, Tennessee courts have held that in determining whether property is marital or separate, the inquiry is not limited to what is contained in the title documents, but rather all interests are to be considered. ***Jones v. Jones***, 597 S.W.2d 886 (Tenn. 1979). "In the final analysis, the status of property depends not on the state of its record title, but on the conduct of the parties." ***Mondelli v. Howard,*** 780 S.W. 2d 769, 774 (Tenn. Ct. App. 1989).

In ***Batson v. Batson,*** 769 S.W.2d 849 (Tenn.App.1988), the court recognized that separate property may become marital if its owner treats it as such. ***Batson***, 769 S.W.2d at 858. The ***Batson*** court defined the doctrine of transmutation as follows:

>> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale

underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. ***This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital.*** The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

2 H. Clark, The Law of Domestic Relations in the United States § 16.2, at 185 (1987).

*Batson,* 769 S.W.2d at 585 (emphasis added).

The assets acquired during the marriage include the one-quarter interest in LADS, the Eaton Street marital residence, the Park Avenue rental property, and an interest in OB Development. All assets were acquired during the marriage and were treated as marital assets by both parties. The trial court drew a distinction between Husband's parents' motivation in giving gifts to Husband and in giving gifts to Wife stating "it was the intention of Husband's parents in making these gifts to confer a benefit upon their child and heir, the gifts to Wife being made in consequence of and as accommodation to the tax laws." Although we do not doubt that Husband's parents wished to confer a benefit on their son, the testimony at trial clearly indicates that these gifts, both to Husband and Wife, were intended to result in a tax benefit to Clinton C. Thomas and his wife. The record reflects that gifts were used to pay marital expenses as well as to purchase marital assets. With regard to these gifts, Clinton C. Thomas testified:

Q:      All right what sort of gifts are you talking about?

A:      We gave them the - - that amount of monies or close to it that you could give tax free - - up to $10,000.00 per child per parent.

                    *       *       *       *       *

Q:      Now, Mr. Thomas, let me just see if we have an agreement about this. You and your wife, pursuant to the $10,000 per person year gift tax exemption, gave gifts to your son and Jennifer - - it looks to be anywhere from 35 to $40,000 a year for a while; isn't that true?

A:      Yes. That's correct.

Q:      All right. And those funds were used by Steve and Jennifer
        Thomas for several purposes. They were used to acquire the
        residence that they now - - she now lives in; isn't that true?

A:      Yes, sir.

Q:      Those funds were used to acquire the Park Avenue property.

A:      Yes, sir.

Q:      Those funds were used to capitalize or make the capital
        contribution to LAD.

A:      Yes, sir.

The classification and division of the interest in OB development and in the Park Avenue property were not raised on appeal, however the record indicates that the Eaton Street property, the interest in LADS, the interest in OB Development, and the Park Avenue property were all acquired during the marriage in the same manner. This Court may in its discretion consider other issues not presented for review. Tenn. R. App. P. 13(b). In the interest of justice, we therefore include the Park Avenue property and the interest in OB Developments in our classification of property.

Since the Eaton Street property, the one-quarter interest in LADS, the interest in OB Development, and the Park Avenue property were acquired during the marriage, and were treated by both parties as marital property, we find that these properties should all be classified in the same manner. We see no evidence in the record to rebut the presumption that all of these assets acquired during the marriage should be classified as marital property. Accordingly, we find that the trial court erred in classifying the interest in LADS and the interest in OB Development as Husband's separate property. Therefore, we vacate the trial court's order as to those properties. We affirm the classification of the Eaton street property as marital property.

The trial court failed to classify the Park Avenue rental property but awarded such property to Wife as alimony *in solido*, indicating an implied classification as Husband's separate property. T.C. A. § 36-5-101(d)(1)(H) requires that in awarding alimony the court should consider "the provisions made with regard to marital property as defined in § 36-4-121." In light of our classification of property, we vacate the award of the Park Avenue Property as alimony to Wife along with the alimony award of one-half of Husband's proceeds from distributions of LADS for ten (10) years. We hold that the Park Avenue property, along with the Eaton Street property, the one-quarter interest in LADS, and the interest in OB Developments are classified as marital property. The case is remanded for an equitable division of marital property in accordance with our holding and for a reconsideration of alimony in light of our finding. Wife's portion of LADS and of OB Development, as determined by the trial court on remand, shall be paid out in annual installments for a period to be determined by the trial court from distributions from these interests.

-12-

Wife's issue I and Husband's issue I both ask whether the trial court erred in calculating Husbands's child support. Wife asserts that the trial court did not consider Husband's income from all sources, arguing that since Husband did not offer evidence at trial as to his current income, the trial court should have taken into consideration the income shown on the 1996 joint tax return. The 1996 joint tax return shows a total gross income of $176,846.00. In addition, Wife contends that the Tennessee Child Support Guidelines provide for an upward deviation of child support where a non-custodial parent does not exercise minimal visitation rights. Wife asserts that there was no visitation schedule set forth in trial court's order or findings. She argues that because it is obvious from the facts of the case that Husband is not exercising the minimum visitation envisioned by the guidelines, an additional amount is required to compensate Wife for the added care of the minor children. Wife further asserts that the guidelines provide for an upward deviation where there are extraordinary expenses for the children. Wife contends that the trial court erred in ordering her to pay one-half of the children's tuition, in light of her inability to work outside of the home and Husband's award of valuable income-producing property. On the other hand, Husband contends that the trail court erred in basing his child support on an earning capacity of $25,000.00 per year because all the evidence at trial pointed to an earning capacity of not more than $20,000.00 per year. Husband asserts that trial court correctly denied Wife's argument that flow-through income from his partnership interest in LADS, which is equal to the taxes owed on the profits, should be included in Husband's gross income for the purposes of calculating his child support obligations since he does not actually realize the income. Husband contends the trial court was not in error on this point, as the decision of whether to distribute profits is made by the General Manager pursuant to the partnership agreement. Husband asserts that according to the Tennessee Child Support Guidelines, there is a rebuttable presumption that all awards of child support are to be based upon the obligor's gross income less FICA, withholding tax, and other court-ordered child support payments. Husband asserts that the Child Support Guidelines contemplate the inclusion of only the income that an obligor parent actually receives and not distributive income. Furthermore, the trial court correctly determined that when and if there is a distribution of income to the partners of LADS, Husband is obligated to pay 41% net income he receives as child support.

In *Brown v. Brown,* No. 03A01-9812-CV-0017, 1999 WL 552854 (Tenn. Ct. App. July 28, 1999), the court stated:

> Since the Legislature has mandated that courts set a definite amount of child support, the issue thus becomes how should that amount be calculated. The child support guidelines, which must be applied as a rebuttable presumption of the proper amount of child support, requires that child support is to be based upon a flat percentage of the obligor's net income, depending upon the number of children to be supported. Tenn. Comp. R. & Regs. tit. 10, ch. 1240-2-4-.03(2). Net income is calculated by subtracting FICA and federal income tax from gross income, so the first step is determining the obligor's gross income. See Tenn. Comp. R. & Regs. tit. 10, ch. 1240-2-4-.03(4).

The guidelines define gross income as:

> all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment....

> Tenn. Comp. R. & Regs. tit 10, ch. 1240-2-4-.03(3)(a). Accordingly, the husband's income in the form of interest, dividends, and partnership distributions would be included within the definition of "gross income." The guidelines further provide that "[v]ariable income such as commissions, bonuses, overtime pay, dividends, etc., should be averaged and added to the obligor's fixed salary." Tenn. Comp. R. & Regs. tit. 10, ch. 1240-2-4-.03(3)(b). Therefore, we conclude that the husband's additional income must be averaged and added to his salary in order to determine gross income for child support purposes.

*Id.* at *4 - *5.

On the issue of the determination of obligor parent's income for the purpose of calculation of child support other jurisdictions have imputed distributive income to an obligor parent with substantial control over earnings of a corporation or a sole stock holder. *See Bleth v. Bleth,* 607 N.W.2d 577, 579 (N.D. 2000) (citations omitted). "The less control the obligor spouse has over retained earnings, however, the more reluctant courts have been to impute corporate income to a stockholder obligor." *Id.* (citations omitted). In *Mitts v. Mitts,* No. E2000-00374-COA-R3-CV, 2000 WL 1156624 (Tenn. Ct. App. Aug. 16, 2000), the Eastern Section of the Tennessee Court of Appeals followed similar reasoning in addressing the issue of the husband's income in setting his child support obligation. In that case the wife argued on appeal that the husbands's obligation should be based upon his distributable share of the corporation and the trial court based his obligation on the amount of his share actually received. *Id.* The corporation is a Subchapter S corporation, and the shareholders are required to pay taxes on their apportioned shares of the corporation's earnings, regardless of the actual interest paid. This requirement is essentially the same for a partnership as in the case of LADS. In addressing the question the *Mitts* Court stated:

This court has held that where a business is solely owned, the business' accumulation of retained earnings can be considered in determining an obligor's income for the purpose of child support. *See Sandusky v. Sandusky*, C/A No. 01A01-9808-CH-00416, 1999 WL 734531, at *4 (Tenn.Ct.App. M.S., filed September 22, 1999). That is because "[a] self-employment situation where an obligor spouse or parent can control the salary he or she receives may raise issues requiring the court to examine whether the potential exists for the obligor to manipulate his reported income either by failing to aggressively solicit business or by inflating his expenses, thereby minimizing his income." *Id.* (internal quotation marks and citation omitted). However, Husband in the instant case is not the sole shareholder of Rivermont. On the contrary, he is a minority shareholder, and the distribution of the corporation's income is within the control of the majority shareholder, his father. Thus, Husband does not have the ability "to manipulate his reported income" as a sole shareholder would. Wife has not cited any authority--and we are not aware of any--that would require a court to consider a corporation's retained earnings in calculating an obligor's income where the obligor is a minority shareholder and thus lacks control over the distribution of the corporation's income. We therefore find that the trial court properly based Husband's minimum child support obligation on the payments Husband actually received from the corporation.

*Mitts,* at *5.

Wife asserts that the distributive income from LADS for 1996 should have been considered in making a determination of Husband's income for child support purposes. Husband contends, however, that the amount shown as distributive income by the partnership was not actually income that he received. The trial court found that Husband did not receive the income as contemplated under the child support guidelines, and from our review of the record, the evidence does not preponderate against the trial court's findings. The trial court's omission of Husband's distributive shares not actually received is in accordance with Tennessee law as Husband's father, not Husband, controls distributions from LADS. *See Mitts, supra.* Husband also asserts that the trial court's finding that his child support obligation should be based upon $25,000.00 per year is not supported by the evidence and that it should be $20,000.00 per year. We must disagree. Husband's brief notes that when the distributive income from LADS and the rental income from Park Avenue are deducted from the 1996 tax return, along with the $686.00 income attributed to Wife, the total amount of income Husband received for the fiscal year 1996 was $25,804.00. Accordingly, the evidence does not preponderate against the trial court's finding that Husband's annual income for child support calculation is $25,000.00. The trial court properly awarded child support based upon this figure. However, on remand the trial court must reconsider the award of child support as to 41% of

Husband's share of distributions from LADS and OB Development. As previously noted, we have determined that Husband's interest in LADS and OB Development as marital property subject to division by the court. Wife's interest is to be paid in installments as determined by the trial court from the distribution Husband received therefrom. Accordingly, Husband's child support obligation for 41 percent of the distribution shall be calculated on the difference between the total distribution and the amount paid to Wife. In addition, the trial court should address the upward deviations from the child support guidelines requested by wife and the division of private school tuition for the parties' three minor children.

In Wife's Issue 4, Husband's Issue 6, Wife contends that the trial court erred in failing to join Husband's father, Clinton C. Thomas, as a third party defendant. Wife asserts that evidence at trial showed that LADS owes the marital estate $67,000.00. Wife asserts that Clinton C. Thomas and Husband fabricated promissory notes to create a debt from Husband to his father, and that Clinton C. Thomas testified at trial that these notes were repaid to him by a distribution from LADS to Husband.

Rule 19 of the Tennessee Rules of Civil Procedure addresses "Joinder of Persons Needed for Just Adjudication" stating:

> **19.01. Person to Be Joined if Feasible. -** A person who is subject to the jurisdiction of the court shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the persons absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party....

The trial court found that Wife's motion to join Clinton C. Thomas as a party defendant was not well taken and denied that motion in its entirety. Our review of the record reveals testimony that the distributions made to repay the loans that Clinton C. Thomas's children had made to LADS were made in November of 1997. Clinton C. Thomas stated that the $49,000.00 distribution from LADS to Husband was actually a payment on the $67,000.00 note that Husband was holding against LADS. Clinton C. Thomas further testified that upon the distribution to Husband, he received funds to apply to the outstanding loan to his son. Although the evidence at trial indicates that the five promissory notes representing Clinton C. Thomas's "loan" to Husband were not executed on the dates testified to by Clinton C. Thomas, we do not believe that the LADS distribution to Husband or the questionable promissory notes justify the addition of Clinton C. Thomas as a third party defendant. Therefore, we find that evidence does not preponderate against the trial court's denial of Wife's

motion. On remand, the trial court should take into account the discredited testimony of the promissory notes in the valuation of LADS for the purpose of an equitable division.

Wife's Issue V and Husband's Issue VII address whether the trial court erred in dismissing Wife's petition for civil contempt with prejudice. On June 1, 1998, Wife filed a petition for civil contempt alleging that Husband was in arrears on his *pendente lite* support for the months of November 1997 through May 1998 in the amount of $11,725.00. The petition also alleged that Husband had failed to pay the children's private school tuition for the 1998/99 school year. The petition was set to be heard on July 21, 1998. On July 20, 1998, counsel for Mr. Thomas requested a continuance. The hearing was rescheduled for August 18, 1998. On October 26, 1998, the trial court entered an order stating that Wife desires to dismiss the petition with prejudice and thereby dismissed Wife's petition for civil contempt with prejudice. On December 11, 1998, the trial court entered a corrected order *Nunc Pro Tunc* stating that Wife desired to dismiss the petition for civil contempt without prejudice and that the trial court's order of dismissal with prejudice was over the objection of Wife. Wife contends that the dismissal of the petition by the trial court with prejudice was in error, because Husband was able to effectively avoid service by moving to Florida. Wife asserts that she is now barred from pursuing a contempt action against Husband for failure to support his children.

We find that the trial court was not in error in dismissing Wife's petition with prejudice. The order correcting the previous order of voluntary dismissal with prejudice states that Husband desired to have the petition for civil contempt dismissed with prejudice. Tennessee Rules of Civil Procedure provide for a dismissal for plaintiff's failure to prosecute or comply with the rules. Tenn. R. Civ. P. 41.02(1). The trial court was not in error in dismissing the petition with prejudice at the request of Husband, as Wife had failed to serve process on the Husband pursuant to Tennessee Rule of Civil Procedure 5.01 requiring service of process of "every pleading subsequent to the original complaint."

Finally, In Wife's issue VI, she contends that the trial court erred in failing to assign marital liabilities. Wife contends that Husband's substance abuse had a tremendous impact on the family's finances. Wife asserts that Husband is in a better position to assume the marital debt as he has a degree in social work and has been employed since receiving his degree. On the other hand, Wife has not been employed outside the home since the birth of the parties' oldest child in 1986, and is currently consumed with the care of the youngest child, Ivy, who has been diagnosed with Williams Syndrome.

Trial courts have the authority to divide marital debts in the same manner that they apportion marital assets. ***Mahaffey v. Mahaffey***, 775 S.W. 2d 618, 623 (Tenn. Ct. App. 1989) (citing ***Whitley v. Whitley,*** 757 P.2d 849, 850 (Okla. Ct. App. 1988); 2 H. Clark, *The Law of Domestic Relations in the United States* § 16.4, at 198 (2d ed. 1987). When apportioning debts, courts are to consider:

> (1) which party incurred the debt and the reason for the debt, *see* ***Dahlberg v. Dahlberg,*** 358 N.W.2d 76, 80 (Minn. Ct. App. 1984); (2) which party benefitted from the loan, ***Bodie v. Bodie,*** 590 S.W.2d 895, 896 (Ky. Ct. App. 1979); ***Shink v. Shink,*** 140 A.D.2d 506, 528 N.Y.S.2d 847, 849 (1988); and (3) which party is better able to assume the debt. ***Geldmeier v. Geldmeier,*** 669 S.W.2d 33, 35 (Mo. Ct. App. 1984).

***Mahaffey,*** 775 S.W.2d at 624.

Wife's uncontroverted testimony at trial indicated that Husband's use of drugs and alcohol contributed to the martial debt. However, it does not appear that Husband was the sole contributor to the debt, nor was he the sole beneficiary. Wife's amended affidavit of income and expenses filed on December 3, 1997, and introduced at trial shows credit card debts totaling $16,602.25, and $177.19 in outstanding, uninsured medical bills.

Because the trial court failed to make an assignment of marital debt, on remand, marital debts should be divided according to the foregoing Tennessee law.

Husband also raises a question regarding the assignment of debt in his issue V which questions whether the trial court erred in failing to credit him $10,400 for the loan he obtained to pay the children's private school tuition. At trial, Husband failed to put on any proof as to the existence of his loan and the record lacks sufficient evidence to establish such debt. In light of the foregoing, the trial court did not err in refusing to rule upon this issue in the parties' divorce proceeding.

In Husband's issue IV, he asserts that the trial court erred in awarding Wife $25,000.00 attorney's fees. An award of attorney's fees constitutes alimony in solido. ***Herrera v. Herrera,*** 944 S.W.2d 379, 390 (Tenn. Ct. App.1996); ***Cranford v. Cranford***, 772 S.W.2d 48, 52 (Tenn. Ct. App.1989). As with any alimony award, in determining whether to award attorney's fees, the trial court should consider the relevant factors in T.C.A. § 36-5-101(d)(1). The decision whether or not to award attorney's fees is within the sound discretion of the trial court and "will not be disturbed upon appeal unless the evidence preponderates against such a decision." ***Kincaid v. Kincaid,*** 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995); *see* Rule 13(d) Tenn. R. App. P.

A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. ***Umstot v. Umstot*** 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); ***and Duncan v. Duncan***, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984). Where the court awards the wife alimony *in solido* adequate for her needs and attorney's fees, it may not be proper for the court to make an additional award of alimony *in solido* for payment of the wife's attorney's fees. ***Id.***

"These awards are appropriate, however, only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses," ***Houghland v. Houghland,*** 844 S.W.2d 619, 623 (Tenn. Ct. App.1992); ***Ingram v. Ingram,*** 721 S.W.2d at 264, or would be required to deplete his or her

resources in order to pay these expenses. ***Harwell v. Harwell,*** 913 S.W.2d 163." ***Brown v. Brown,*** 913 S.W.2d 163, 170.(Tenn. Ct. App. 1994). In addition, the spouse obtaining the divorce should not be left in a worse financial situation than he/she was before the other spouse's misconduct brought about the breakup of the marriage. ***See Long v. Long,*** 957 S.W.2d 825, 830 (Tenn. Ct. App. 1997); ***Shackleford v. Shackleford,*** 611 S.W.2d 598, 601 (Tenn. Ct. App.1980).

Because of our reclassification of the parties' property and the necessity of a determination by the trial court of the division of marital property, the award of attorney fees should be vacated for further consideration by the trial court on remand.

In sum, the trial court's classification of the one quarter interest in LADS and the interest in OB Development is reversed, and these interests are classified as marital property. The trial court's implicit classification of the Park Avenue property as Husband's separate property is reversed, and this property is classified as marital property. The trial court's classification of the Eaton Street property as marital property is affirmed. In view of the reclassification of the marital property, we vacate the decree of the trial court as to distribution of marital assets and the award of alimony *in solido* and remand the case to the trial court for a proper determination of the division of marital property and award of alimony *in solido* if required, consistent with this opinion. The award to Wife of $25,000.00 attorney fees as alimony *in solido* is likewise vacated to be considered on remand in conjunction with the court's distribution of marital property. On remand, the trial court shall also apportioned the marital debt. The trial court's decree as to child support is vacated. On remand, the trial court should set the amount of Husband's monthly child support obligation in accordance with this opinion. The trial court's present award of child support remains in effect pending determination and award of child support on remand. The trial court's decree is affirmed with regard to Husband's IRA, the award of custody of the parties' three minor children, visitation, and insurance. The case is remanded for further proceedings consistent with the opinion. Costs of the appeal are equally divided between the parties, appellant, Jennifer Purcell Thomas, and appellee, Stephen Alexander Thomas, and their sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.