# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 2000 Session

## BYRON LOWELL MITTS v. VIRGINIA ANN JONES MITTS

**Appeal from the Circuit Court for Hamilton County**
**Nos. 97-D-2629 and 97-D-2635     W. Neil Thomas, III, Judge**

### FILED AUGUST 16, 2000

### No. E2000-00374-COA-R3-CV

---

The trial court dissolved a marriage of over 26 years. Wife appeals, arguing (1) that the increase in value of Husband's separate property interest in two stock holdings is, in each instance, marital property; (2) that the trial court erred in its award of alimony; (3) that the trial court erred in calculating Husband's child support obligation; and (4) that she is entitled to an award of attorney's fees, both at the trial level and on appeal. We affirm the trial court's classification of the increase in value of Husband's Rivermont stock as his separate property. We also affirm the trial court's finding that no portion of the value of the Coca-Cola stock is marital property. We modify the award of rehabilitative alimony so as to provide for a monthly payment of $2,000 for a period of four years beginning with the first full month after the entry of the divorce judgment below. We find that Wife is entitled to her attorney's fees at both stages of this proceeding. We remand this case for the trial court to determine if the child support obligation should be increased due to Husband's lack of standard visitation.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Affirmed in Part; Modified in Part; Reversed in Part; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Phillip C. Lawrence and David H. Lawrence, Chattanooga, Tennessee, for the appellant, Virginia Ann Jones Mitts.

Rosemarie L. Bryan and William R. Hannah, Chattanooga, Tennessee, for the appellee, Byron Lowell Mitts.

## OPINION

## I. *General Overview*

Byron Lowell Mitts ("Husband") and Virginia Ann Jones Mitts ("Wife") were married in 1972. At the time of their divorce, Husband was 47 years old; Wife was 46. They had two children, the younger of which, Byron Adam Mitts ("Adam"), was 17 at the time of trial. The older child has reached the age of majority.

The trial court awarded Wife an absolute divorce upon stipulated grounds. The parties were awarded joint custody of Adam, with Wife being designated as the primary residential custodian. Husband was awarded "reasonable" visitation rights. The trial court ordered Husband to pay child support of $642 per month, based upon a finding that his monthly gross income was $4,151. The court awarded Wife rehabilitative alimony of $2,000 per month until Adam graduated from high school in June, 2000, a period of approximately 14 months after the final divorce judgment was entered. The trial court divided the marital property as follows:

| Asset | Value | Wife | Husband |
|---|---|---|---|
| Marital Residence | $ 81,436 | $ 47,500 | $ 33,936 |
| 1996 Blazer | 14,000 | 14,000 | |
| Furnishings | 3,000 | 3,000 | |
| Insurance Policies | 45,930 | 14,125 | 31,805 |
| Total | $144,366 | $ 78,625 | $ 65,741 |

The trial court ordered Husband to pay all balances owed on the parties' jointly-held credit cards and charge accounts. The court did not specify the sum of these debts, noting that the evidence on this subject was "confusing." It further held that the appreciation in value of Husband's stock in Rivermont Golf and Country Club, Inc. was the separate property of Husband. With regard to the shares of Coca-Cola stock that Husband had owned jointly with his mother for a period of time during the marriage, the court concluded that the stock was not marital property subject to division. The trial court declined to award attorney's fees to either party.

## II. *Standard of Review*

Our review of this non-jury case is *de novo* upon the record with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The trial court's conclusions of law are not accorded the same deference. **Brumit v. Brumit,** 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997).

## III. *Increase in Value of Rivermont Stock*

The first issue Wife raises on appeal addresses the classification of the increase in value of the Rivermont stock. Although Wife does not dispute that the value of the stock when it was

transferred to Husband is his separate property, she argues that the increase in its value during the marriage should be classified as marital property and equitably divided between the parties.

T.C.A. § 36-4-121(b) provides that marital property includes "any increase in value during the marriage of, property determined to be separate property...if each party substantially contributed to its preservation and appreciation...." T.C.A. § 36-4-121(b)(1)(B) (1996). To be considered substantial, a spouse's contribution to the preservation and appreciation of the property must be "real and significant." *Brown v. Brown,* 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). Whether a spouse made substantial contributions to the preservation and appreciation of separate property is a question of fact. *Sherrill v. Sherrill,* 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992).

At the time of the parties' marriage, Husband was employed by Rivermont Golf and Country Club, Inc., a corporation that operated a golf course and country club in Chattanooga, Tennessee. Husband worked as the general manager of the entire operation for most of the parties' marriage. He often worked long hours, especially during the spring and summer months. Husband performed many duties, including hiring and scheduling employees, maintaining the grounds, working in the pro shop, and organizing the golf tournaments.

The Rivermont corporation was formed in 1952 by Husband's father, Russell Mitts, who was, at the time of its formation, the sole shareholder of the corporation. For a number of years, Rivermont leased the premises on which the golf course-country club was located. In 1967, Rivermont purchased the property for $400,000. From 1978 to 1982, Russell Mitts made gifts of Rivermont stock to each of his three children, including Husband. By 1982, each child had received shares of stock representing a 9.44% interest in Rivermont. Russell Mitts remained the majority shareholder. In March, 1997, Rivermont sold the land on which it operated the golf course and country club to a developer who intended to use the property for residential development. Rivermont auctioned off its equipment and inventory. When the developer received the property, he removed the golf course, the clubhouse, the sprinkler system, and the swimming pool in order to develop the property into a residential subdivision. In exchange for the property, Rivermont received commercial properties with a net value of $6,500,000. Rivermont currently receives the lease income from these commercial properties.

In finding that the increase in value of the Rivermont stock is Husband's separate property, the trial court relied upon the Supreme Court's decision in *Harrison v. Harrison,* 912 S.W.2d 124 (Tenn. 1995). In that case, the husband owned separate property, which, because of the construction of an interstate highway across the property, had increased in value from $7,000 to $1,361,750 at the time of the divorce. *Id.* at 125. The parties agreed that the sole cause of the increase in the property's value was the construction of the interstate. *Id.* The trial court found, however, that the increase in value should nevertheless be classified as marital property, citing Wife's contributions to raising cattle on the property and the use of marital funds to satisfy a debt secured by the property. *Id.* at 126. The Supreme Court rejected the lower court's conclusion, finding that T.C.A. § 36-4-121(b)(1)(B) does not "permit the conclusion that *any* increase of value during marriage constitutes marital property." *Id.* at 127. (Emphasis in *Harrison*). The Supreme Court concluded that the

increase in the property's value was not marital property, finding that the increase was not attributable, either directly or indirectly, to Wife's efforts. *Id.*

The evidence does not preponderate against the trial court's finding in the instant case that the increase in value of Husband's Rivermont stock is the separate property of Husband. While Husband's efforts in his role as general manager -- and Wife's efforts in her role as parent and homemaker -- most certainly contributed, directly or indirectly, to the success of the *golf course and the country club*, the increase in value of the corporation's stock resulted not from the golf course and country club but rather from the attractiveness of the raw land *as developable residential property.* Neither party by his or her efforts, directly or indirectly, contributed to the increase in value of the underlying property as it is presently being used and for which it was purchased by the developer. As such, the trial court correctly classified the increase in value as Husband's separate property. The rationale of **Harrison** applies to the fact of this case. This issue is found adverse to Wife.

### IV. *Appreciation in Coca-Cola Stock*

Wife contends that the increase in value of the Coca-Cola stock that Husband had owned during the marriage should be classified as marital property. Although Husband did not own the stock at the time of the divorce -- having conveyed it to his mother -- Wife argues that the increase in value of that stock should be considered marital property because Husband fraudulently conveyed the stock to his mother in anticipation of filing for divorce.

Wife did not allege at trial that Husband had committed a fraudulent conveyance.[1] An issue not raised at trial cannot be raised for the first time on appeal. *Sparks v. Metropolitan Gov't of Nashville and Davidson County,* 771 S.W.2d 430, 434 (Tenn. Ct. App. 1989). Even assuming that the issue is properly before us, however, there is no indication that any part of the stock's value constitutes marital property. Wife does not dispute that the stock itself was Husband's separate property initially; moreover, there is no evidence that the increase in its value was a result of a substantial contribution by either of the parties. Because the stock was Husband's separate property, the transaction between him and his mother is not directly relevant to the issue of the equitable division of the parties' marital property. This issue is also found adverse to Wife.

### V. *Alimony and Attorney's Fees*

The trial court awarded Wife $2,000 per month in rehabilitative alimony until June, 2000, which was the expected graduation date of the parties' minor child. Wife argues that the trial court failed to award her an adequate amount of alimony for a sufficient duration.

---

[1]As the trial court correctly pointed out, that court could not have set aside the conveyance even had it found it to have been fraudulently made since Husband's mother is not a party to these proceedings.

The amount and duration of alimony are issues with respect to which the trial court exercises wide discretion. *Garfinkel v. Garfinkel,* 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). In making an alimony determination, a court should be guided by the factors set forth in T.C.A. § 36-5-101(d)(1)(A) - (L) (Supp. 1999). The "real need" of the requesting spouse "is the single most important factor." *Cranford v. Cranford,* 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989). "In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." *Id.*

The relevant statute, T.C.A. § 36-5-101, clearly reflects a bias in favor of rehabilitative alimony. *See* T.C.A. § 36-5-101(d)(1) (Supp. 1999). However, it is also clear that rehabilitative alimony is favored only in cases where rehabilitation is feasible. *See id.*

In its memorandum opinion, the trial court noted that although Wife's income and expense statement indicates that she needs $3,334 per month, that amount includes expenses being paid by Husband. Thus, the court concluded that Wife's monthly need is actually $2,192. Citing Wife's absence from the labor market for a significant amount of time and her lack of marketable skills "except in the teaching arena," the court awarded Wife rehabilitative alimony of $2,000 per month until June, 2000. The court noted that "[Wife] testified that she would only need alimony until Adam graduates from high school."

The evidence reflects that Wife was employed for the first three years of the parties' marriage, first as a bank teller and then as an elementary school teacher. The parties mutually agreed that she would stay home after the children were born. This she did for the next 23 years. Wife testified that she wished to stay at home until Adam graduated from high school so she could be there for him as she had been there for the parties' daughter and so she could continue to volunteer at his high school. Regarding Wife's need for alimony, the following exchange during her cross-examination is pertinent:

> Q    Okay. So if the Judge were to rule that you needed some sort
> of money to sustain yourself, and I'm not talking about child support,
> you'd only need that until Adam graduated from high school, correct?
>
> A    I suppose. I would, I suppose.

The evidence does not preponderate against the trial court's finding that rehabilitative alimony is appropriate in this case. Wife was 46 years old at the time of trial and was in good health. She has a bachelor's degree in education and can return to the teaching profession once she renews her certification. We find, however, that the evidence preponderates against the trial court's finding that a period of approximately 14 months is sufficient to rehabilitate Wife. Although we acknowledge that Wife agreed -- albeit somewhat ambivalently -- on cross-examination that she "suppose[d]" that she would only need support to sustain herself until Adam graduated from high school, the conclusion that Wife could be rehabilitated by that time flies in the face of the other evidence in this case, such as the relatively small amount of marital property awarded to Wife; her absence from the workforce for approximately 23 years; her lack of liquid assets or an income

stream; and the indefiniteness of her plans for successfully re-entering the workforce. The evidence shows that at the time of the divorce, Husband had gross income of $49,800 a year and stock in a very substantial income-producing corporation, while Wife had no income and no job prospects. Wife is clearly economically disadvantaged relative to Husband. After careful consideration of the factors set forth in T.C.A. § 36-5-101(d)(1), we find that an award of four years of rehabilitative alimony is the appropriate decree in this case. Based on the evidence before us, we find that Husband has the ability to pay the alimony decreed in this opinion.

We further find that Wife is entitled to an award of attorney's fees at trial and on this appeal. An award of attorney's fees is in the nature of alimony. *Smith v. Smith,* 912 S.W.2d 155, 161 (Tenn. Ct. App. 1995). Because we find that Wife has demonstrated the requisite need and that Husband has the ability to pay, we also reverse the trial court on this issue.

## VI. *Child Support*

Wife next argues on appeal that the trial court erred in setting Husband's child support obligation. Specifically, Wife argues that the trial court erred (1) in failing to find that Husband was willfully unemployed or underemployed; (2) in failing to consider Rivermont's retained earnings in calculating Husband's income; and (3) in failing to deviate upwardly from the Child Support Guidelines because of Husband's lack of parenting time with the child. We will consider each of these arguments in turn.

### A.

Wife first argues that Husband was willfully unemployed or underemployed. The evidence reflects that in 1997, Husband was earning a annual salary of $49,800 as the general manager of the golf course-country club operation. After the property was sold, Rivermont began distributing income to Husband in an amount equal to his former salary. Thereafter, Husband obtained his realtor's license and became an agent with a realty company. He testified that he regularly reports for work and that he has performed some work for the company. He testified, however, that he has recently developed health problems. Husband was diagnosed with sleep apnea and had surgery to treat this condition in 1998. He testified that he continues to suffer from sleep apnea and that he hopes to work more when his health improves.

The trial court refused to find that Husband was willfully unemployed or underemployed. Given his recent health problems, his efforts to start working in the real estate field, and the fact that Husband is receiving the same amount from Rivermont as he did when he was employed at the club, we cannot say that the evidence preponderates against the trial court's finding on this issue. Wife's argument is found to be without merit.

B.

Wife next argues that the trial court should have considered the earnings retained by Rivermont in calculating Husband's gross income. She argues that Husband's obligation should be based upon $76,587, Husband's distributable share of the corporation's earnings in 1998.[2] The trial court based the child support obligation on the payments that Husband actually received from the corporation, which totaled $49,800.

This court has held that where a business is *solely owned*, the business' accumulation of retained earnings can be considered in determining an obligor's income for the purpose of child support. *See Sandusky v. Sandusky,* C/A No. 01A01-9808-CH-00416, 1999 WL 734531, at *4 (Tenn. Ct. App. M.S., filed September 22, 1999). That is because "[a] self-employment situation where an obligor spouse or parent can control the salary he or she receives may raise issues requiring the court to examine whether the potential exists for the obligor to manipulate his reported income either by failing to aggressively solicit business or by inflating his expenses, thereby minimizing his income." *Id.* (internal quotation marks and citation omitted). However, Husband in the instant case is not the sole shareholder of Rivermont. On the contrary, he is a minority shareholder, and the distribution of the corporation's income is within the control of the majority shareholder, his father. Thus, Husband does not have the ability "to manipulate his reported income" as a sole shareholder would. Wife has not cited any authority -- and we are not aware of any -- that would require a court to consider a corporation's retained earnings in calculating an obligor's income where the obligor is a minority shareholder and thus lacks control over the distribution of the corporation's income. We therefore find that the trial court properly based Husband's minimum child support obligation on the payments Husband actually received from the corporation.

Wife has filed a motion to consider post-judgment facts in this case, asking this Court to consider Husband's amended 1998 tax return, which reflects that Husband's gross income is $104,812. We note that the bulk of the changes that prompted the filing of the amended tax return relate to Husband's interest in Rivermont. Upon reviewing the amended return, we find that it does not alter our finding that the trial court did not err in basing Husband's child support obligation upon the amount of income actually distributed to him rather than upon the higher gross amount of Rivermont income upon which Husband was required to pay federal income taxes.

C.

Finally, Wife contends that the trial court should have deviated upwardly from the Child Support Guidelines because Husband has not exercised standard visitation with the child. Husband argues that Wife did not raise this issue at trial and therefore, so the argument goes, the issue should not be considered by us on this appeal. We find that the issue of the amount of visitation exercised by Husband was litigated at trial. Both Husband and Wife testified as to the amount of time

---

[2]Because Rivermont is a Subchapter S corporation, Husband, as a 9.44% shareholder, must pay taxes on his apportioned share of the corporation's earnings, regardless of how much of his share is actually paid to him.

Husband spent with the child, and both parties were questioned as to whether Husband exercised overnight visitation. Child support was the only issue upon which this testimony was relevant. In this connection, it should be noted that Husband did not seek to be the child's primary residential custodian. Upon reviewing the parties' testimony, we find that the evidence preponderates that Husband has not exercised any overnight visitation with the child. The trial court's memorandum opinion does not address this testimony. Thus, we find that it is appropriate to remand this case so the trial court can consider this testimony and determine whether, and, if so, to what extent, an increase in child support is appropriate in view of the fact that the minor child did not spend the amount of visitation time contemplated by the Guidelines. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(1)(b).

## VII. *Conclusion*

We modify the trial court's rehabilitative alimony award and remand for the entry of an appropriate order on this subject. We reverse the trial court's decree regarding Wife's request for attorney's fees at the trial court level. We remand this case for further proceedings on the issue of child support and the appropriate amount to be awarded Wife as attorney's fees, both for professional services and expenses at the trial level and on appeal, all consistent with this opinion. Except as reversed, modified, or otherwise changed or altered by this opinion, the judgment of the trial court is affirmed. Exercising our discretion, we tax the costs on appeal half to each of the parties.

_____
CHARLES D. SUSANO, JR., JUDGE