# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 15, 2006 Session

## IAIN HISCOCK v. SUE E. HISCOCK

**Appeal from the Circuit Court for Franklin County**
**No. 13365-CV     Buddy D. Perry, Judge**

---

**No. M2005-01489-COA-R3-CV - Filed on October 19, 2006**

---

Husband appeals the type and amount of alimony awarded to Wife after the termination of a twenty-seven year marriage. The decision of the trial court is affirmed as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Modified in Part**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

H. Wayne Grant, Steven W. Grant, Chattanooga, Tennessee, for the appellant, Iain R. Hiscock.

Clinton H. Swafford, Winchester, Tennessee, for the appellee, Sue E. Hiscock.

## OPINION

This appeal concerns the type and amount of alimony awarded to Wife after the termination of a twenty-seven year marriage. Mr. Iain Hiscock and Ms. Sue Hiscock were married on September 10, 1977, in Surrey County, England. The parties moved to Franklin County, Tennessee, in October 1977, in order for Mr. Hiscock to pursue an employment opportunity at Commercial Nursery Company, Inc. ("Commercial Nursery"). On August 19, 2002, after twenty-seven years of marriage, Mr. Hiscock filed a complaint for divorce alleging irreconcilable differences and inappropriate marital conduct. However, prior to the court rendering its opinion, the parties stipulated as to the grounds of divorce and reached an agreement as to the division of marital assets and liabilities, while leaving the issues of child support, alimony, and attorney's fees for the court's determination. The sole issue challenged by Mr. Hiscock on appeal concerns whether the trial court erred in awarding Ms. Hiscock alimony *in futuro* in the amount of $5,000.00 per month.

Mr. Hiscock is the co-owner of Cherokee Dogwood Corporation and the sole owner of Commercial Nursery, a corporation with an appraised value of $2,871,607.00. While Ms. Hiscock has a college degree in hotel and catering, she has primarily served as the primary caregiver to the

parties' four sons, only one of which remains a minor. In addition to her role as homemaker, Ms. Hiscock has maintained part-time employment as a swimming instructor, earning an annual income of $12,600.00. However, prior to the birth of the parties' first child, Ms. Hiscock was employed as the secretary to the Vice Chancellor of The University of the South. Although healthy, Ms. Hiscock was forty-nine years old at the time of divorce. Due to the success of Commercial Nursery, the parties' net worth is estimated in excess of $3,000,000.00.

We review this non-jury case *de novo* upon the record with a presumption of correctness afforded to the trial court's factual findings unless the evidence preponderates otherwise. *Mitts v. Mitts*, 39 S.W.3d 142, 144 (Tenn.Ct.App.2000). "The trial court's conclusions of law are not accorded the same deference." *Mitts*, 39 S.W.3d at 144.

Mr. Hiscock first alleges that the trial court erred in the amount of alimony awarded to Ms. Hiscock since Ms. Hiscock received a sizeable portion of the marital estate which included income producing assets. Mr. Hiscock also claims that the trial court overestimated his ability to pay. The trial court exercises substantial discretion in determining whether to award spousal support as well as the amount and duration of the support if it is warranted. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn.2004). In determining whether to make an award of alimony, the type of alimony, and the amount thereof, the trial court must consider the factors set forth in Tennessee Code Annotated section 36-5-121(I):

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (6) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (7) The separate assets of each party, both real and personal, tangible and intangible;
> (8) The provisions made with regard to the marital property as defined in § 36-4-121;
> (9) The standard of living of the parties established during the marriage;
>
> (10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn.Code Ann. § 36-5-121(I).

As the trial court duly noted, many of the factors listed in Tennessee Code Annotated section 36-5-121(I) weigh in favor of Ms. Hiscock, including her limited history of employment, the long duration of the marriage, Ms. Hiscock's age, the affluent lifestyle experienced by the parties during the marriage, Ms. Hiscock's intangible contributions to the marriage as homemaker and primary caregiver of the parties' children, and Mr. Hiscock's infidelity which led to the deterioration of the marriage. However, it is well established that the two factors which are considered most relevant in deciding the amount of alimony awarded in a proceeding are the economically disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn.2002).

When determining how much the economically disadvantaged spouse needs in order to maintain the same or similar standard of living as enjoyed during the marriage, the court should consider the equitable distribution of the marital assets. See Tenn.Code Ann. § 36-5-121(i)(1); *Evans v. Evans*, No. W2001-03037-COA-R3-CV, 2003 WL 135053, at *5 (Tenn.Ct.App. Jan. 14, 2003). In this case, the division of the marital estate was favorable to Ms. Hiscock. According to the final decree of divorce, Ms. Hiscock received $250,000.00 in cash, a $400,000.00 promissory note bearing interest at the rate of 6% per annum, the entirety of Mr. Hiscock's individual retirement accounts which had an estimated value of $131,500.00, and the marital home which is not subject to any mortgage or liens and is valued at $230,000.

In addition, "the separate assets of each party, both real and personal, tangible and intangible" are relevant when calculating alimony. Tenn.Code Ann. § 36-5-121(i)(7). Prior to the divorce, Ms. Hiscock's father gave her a home referred to as the Brightwater estate valued at $220,800, which is used by Ms. Hiscock as a rental property. According to the 2003 tax returns, the estate produces a yearly income of $9,600.00. Ms. Hiscock was also shown to earn $12,600.00 a year as a swimming instructor, working only a couple hours a day. Although there was no proof in the record of the average yearly salary of a college graduate, we believe that Ms. Hiscock has the ability to earn significantly more with her education despite her lack of professional experience.

Mr. Hiscock further argues that he is unable to pay the court awarded monthly alimony due to the financial obligations created by his acquisition of Commercial Nursery and the interest bearing note owed to Ms. Hiscock as a result of the division of the marital estate. We find this argument less persuasive. Often times we encounter obligor spouses who own a business and assert that they are unable to pay the court awarded alimony, pointing to their prior tax returns for support. We are mindful that in these instances, it is usually the obligor spouse who determines his or her salary. Since this factual determination clearly lies within the discretion of the trial court and the evidence

does not preponderate against the court's finding that Mr. Hiscock has the ability to pay, we do not find this argument persuasive. However, based upon the substantial assets awarded to Ms. Hiscock in the division of the marital estate as well as our belief that Ms. Hiscock has the ability to earn more than $12,600.00 a year because of her college education and the rental income produced by the Brightwater estate, we reduce the trial court's monthly alimony award to $3,000.00.

Mr. Hiscock also claims that trial court erred in awarding Ms. Hiscock alimony *in futuro* since he believes that Ms. Hiscock has the ability to be rehabilitated.

> The legislature has demonstrated a preference for an award of rehabilitative alimony to rehabilitate an economically disadvantaged spouse. *See Crabtree v. Crabtree,* 16 S.W.3d 356, 358 (Tenn.2000). However, trial courts should not refrain from awarding long-term support when appropriate under the enumerated statutory factors. *Robertson,* 76 S.W.3d at 341-42. "The statutory preference for rehabilitative support does not entirely displace other forms of spousal support when the facts warrant long term or more open-ended support." *Anderton v. Anderton,* 988 S.W.2d 675, 682 (Tenn.Ct.App.1998).

*Bratton*, 136 S.W.3d at 605.

"To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage." Tenn.Code Ann. § 36-5-121(d)(2). It is undisputed that Ms. Hiscock has no practical professional experience other than her work as an administrative assistant and as a swimming instructor. Although we believe that Ms. Hiscock's degree in hotel and catering will allow her to earn more than she presently makes as a swimming instructor, it is doubtful that at her age Ms. Hiscock will be able to obtain employment with an earning capacity which provides her with the affluent standard of living enjoyed by the parties during the marriage. We therefore agree with the trial court that permanent alimony is appropriate in this case in order to supplement that which Ms. Hiscock is able to earn herself.

The judgment of the trial court is affirmed as modified. The costs of appeal are assessed equally between the parties.

_____
WILLIAM B. CAIN, JUDGE

-4-