# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### February 20, 2014 Session

## MELINDA JAN METZINGER v. RONALD WAYNE METZINGER

### Direct Appeal from the Chancery Court for Dyer County
### No. 12CV267      Tony Childress, Chancellor

### No. W2013-02220-COA-R3-CV - Filed April 22, 2014

This appeal involves the classification and division of Husband's $66,000.00 personal injury settlement in a divorce proceeding. The trial court classified the settlement as marital property, it deducted $13,400.00 for what it found to be "legitimate expense[s] of the marriage" paid by Husband, and it awarded Wife one-half of the balance, or $26,300.00. We reverse the trial court's award to Wife.

#### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Jason R. Creasy, Dyersburg, Tennessee, for the appellant, Ronald Wayne Metzinger

Albert Wade, Jr., Paris, Tennessee, for the appellee, Melinda Jan Metzinger

# MEMORANDUM OPINION[1]

## I. FACTS & PROCEDURAL HISTORY

Melinda Jan Metzinger ("Wife") and Ronald Wayne Metzinger ("Husband") married in August 2004. On March 4, 2011, Husband, an over the road truck driver, was injured when an intoxicated driver ran over him as he stood in the parking lot of an establishment. At some point in 2012,[2] Husband received a $66,000.00 personal injury settlement. In June 2012, Wife filed a Complaint for Divorce in the Dyer County Chancery Court. Husband filed an Answer and Counter-Claim for divorce.

Aside from the personal injury settlement which is the sole subject of this appeal, the parties agreed to a division of property and debts. Additionally, they agreed to a Permanent Parenting Plan concerning their three children.

A trial was held in July 2013 concerning the classification and division of the personal injury settlement.[3] At trial, Husband contended that Wife bore the burden of proving the settlement money was marital property and he claimed that she had failed to do so. Alternatively, he argued that the money could not be classified as marital and divided by the court, because it was expended prior to trial.

Husband and Wife were the only witnesses at trial.[4] He testified that he received a $66,000 personal injury settlement in 2012. He acknowledged that the settlement did not delineate between recovery for lost wages, pain and suffering, medical expenses, etc. In fact, Husband was not sure what types of damages his lawsuit had sought, or even if the settlement was the result of a lawsuit. Husband testified that, outside of the settlement, all of his medical expenses were paid for, with the exception of one medical bill and an ambulance

---

[1]Rule 10 of the Rules of the Court of Appeals provides as follows:
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]Husband testified, "I did not have that settlement money until the following year[, 2012.]" The exact timing of the settlement is unclear from the record.

[3]A trial transcript is included in the record before us.

[4]Husband called no witnesses nor did he introduce any documents into evidence.

bill, totaling $3,400.[5]

Husband testified that he was seriously injured as a result of his accident. He stated that his leg was broken "completely in half" requiring the insertion of a steel rod and pins. He stated, "I would say all of [the settlement] was pretty--well, I probably would say 80 percent of [the settlement] was for pain and suffering." When he was asked of the basis for this statement, he responded, "Because I was the one feeling the pain and suffering." Husband testified that he was unable to work for seven months and that during his time off he was not in pain because he was taking pain medication. However, he explained that he could not resume his employment as a truck driver while on medication. Husband claimed that when he did not take his pain medication he was in "excruciating pain" and that after he returned to work, he was "in pain constantly" for approximately six months. Husband agreed that he was "[un]able to get around" for a period of time following his injury and that he was "emotionally bothered by the fact that [he] couldn't work."

Wife testified that she was not fully aware of the extent of Husband's injuries because the parties separated soon after his accident; however, she corroborated his testimony that his "leg was crushed" requiring emergency surgery to insert a steel rod and pins. She testified that she provided care for Husband for a brief period following the accident. She stated that during that time "he wasn't having a whole lot of trouble getting around. He had a walking cane. And he was fairly mobile. And he experienced some pain at night."

As stated above, Husband testified that, as a result of his accident, he was out of work for seven months–from March 4, 2011 to September 9 or September 15, 2011. He seemed to indicate that only a small portion, if any, of his personal injury settlement represented lost wages because he claimed that his personal injury lawyer was aware only of his January and February 2011 income[6] and because "[t]here's no way to determine what my wages will be from month to month or year to year."

---

[5]The trial court correctly classified as marital property, the $3,400 amount representing reimbursement for medical bills. *See* **Tenn. Code Ann. §36-4-121(b)(1)(C)**. It deducted this amount, among others, from the $66,000 settlement award. On appeal, Wife does not argue that she is entitled to a portion of this amount.

[6]Husband did not explain why the attorney could not simply have multiplied the January and February figures by additional months.

Husband's tax returns were admitted into evidence. His 2010 joint tax return listed gross receipts of $105,314,[7] total expenses of $91,812,[8] and, thus, a net profit of $13,502. His 2011 individual tax return indicated gross receipts of $61,136, total expenses of $53,978,[9] and thus, a net profit of $7,158.00. Husband attributed the decrease in his income from 2010 to 2011 to his inability to work for seven months during that year. However, he also seemed to indicate that 2011 was not a "down" year because he typically grosses $60,000 per year–which he grossed in 2011–and because after returning to work in September 2011, he worked excessively to make up his lost time.

Husband testified regarding his Affidavit of Monthly Income and Expenses, which he filed in September 2012, and which listed his monthly expenses as $1,968.00, his net income as $860.83, and thus, a monthly deficit of -$1,107.17. When Husband was presented with the Affidavit at trial, he stated, "Well, that's not right." However, he then stated that in some months he earns "much more" than $860, but that in other months he does not.

A printout of Husband's bank deposits was also entered into evidence. The printouts listed direct-deposited payments from Husband's employer totaling as follows: $2,993.76 from March to April 2012; $2,263.62 from April to May 2012; $823.39 from May to June 2012; $1,774.75 from July to August 2012; $1,350.78 from August to September 2012; $2,332.93 from September to October 2012; and $3,510.26 from October to November 2012. At trial, Husband explained that these deposits indicate net pay; Father's fuel costs[10] have already been deducted, but his expenses for his cell phone, vehicle repairs, and tires have not.

Husband testified that he expended all of the settlement proceeds prior to trial as follows: $8,600 to the IRS; $10,000 to repay a loan to his mother; $10,000 to repair his semi-truck motor; $3,500 to repay a loan to a friend; $1,000 to repay a loan to his girlfriend; $9,000 to catch up past-due truck payments; $5,500 to pay credit card debt; $2,500 to $3,000 to pay off a fuel card; and $1,600 to $2,000 to pay a child support arrearage.[11]

---

[7]Although the return is filed jointly with Wife, these receipts are listed on Husband's Schedule C as being earned by him as a truck driver.

[8]The expenses included $41,361 in fuel, $11,593 in repairs and maintenance, $6,947 in depreciation, and $12,544 in deductible meals and entertainment.

[9]The expenses included $21,486 in fuel, $27,997 in repairs, and $3,474 in depreciation.

[10]Father testified that he spends approximately fifty percent of his gross income on fuel costs.

[11]We note that these amounts, together with the $3,400 amount to repay an ambulance bill and a medical bill, total $56,000.00

-4-

Wife testified that Husband was out of work for "[s]everal months[,]" approximately "five and a half to six . . . give or take." Wife did not know how the personal injury settlement was apportioned between lost wages and pain and suffering, but she "assume[d] that [the settlement] would be five or six months worth of lost wages, since that's how long [Husband] was off work." She could not testify as to the accuracy of Husband's tax returns, but she agreed that, at trial, Husband "just established five or six months of lost wages would be about $6,500[.]" Wife did not know whether Husband had expended all of the settlement proceeds and, if so, she "ha[d] no idea what he spent it on."

On July 17, 2013, the trial court entered its Findings of Fact and Conclusions of Law. The trial court found that because the settlement was acquired during the parties' marriage, the full $66,000.00 award was presumptively marital property; it found that Husband had failed to rebut this presumption. However, it concluded that Husband had expended $13,400.00 on "legitimate expense[s] of the marriage"–$3,400.00 to pay medical bills and $10,000.00 to repair the engine of his semi truck–and, thus, it deducted this amount from the $66,000.00 settlement award. The trial court found that Husband "did not establish that he spent the remaining $52,600.00 on legitimate expenses of the marriage." Instead, it found that Husband had "dissipated" the money, and it awarded Wife one-half of $52,600.00, or $26,300.00.

A Final Decree of Divorce was entered on September 4, 2013. Husband timely appealed.

## II. ISSUES PRESENTED

Appellant presents the following issues for review:

1. Whether the trial court erred in determining that a portion of Appellant's personal injury settlement funds, which were no longer in existence, was marital property; and

2. Whether the trial court erred in determining what amount of Appellant's personal injury settlement funds were marital property.

For the following reasons, we reverse the trial court's award of $26,300.00 to Wife.

## III. STANDARD OF REVIEW

The classification of property as marital or separate is a question of fact. ***Mitts v. Mitts***, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000). On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. **Tenn. R. App. P. 13(d);** *Bogan v. Bogan* 60 SW.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

We give great weight to a trial court's division of marital property and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." ***Herrera v. Herrera***, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996).

## IV. DISCUSSION

On appeal, Husband first challenges the classification of the settlement proceeds as marital property. He contends that because the funds were expended prior to the divorce hearing, they cannot be classified as marital property. Alternatively, he argues that even if the settlement proceeds existed at the time of the final divorce hearing, the bulk of the settlement represented a payout for pain and suffering, and, thus, that only "a small portion" of the proceeds can be classified as marital property.

Tennessee Code Annotated section 36-4-121(b)(1) defines "marital property," in pertinent part, as follows:

> (A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . .

-6-

. . . .

(C) "Marital property" includes recovery in personal injury . . . for the
following: wages lost during the marriage, reimbursement for medical bills
incurred and paid with marital property, and property damage to marital
property.

**Tenn. Code Ann. 36-4-121(b)(1)(A), (C)**.

On appeal, Husband argues that property cannot be classified as marital unless it is
owned by a divorcing party at the time of the final divorce hearing. That, however, is simply
not the law in Tennessee. In *Larsen-Ball v. Ball*, 301 S.W.3d 228, 233-34 (Tenn. 2010), our
Supreme Court clarified Tennessee Code Annotated section 36-4-121(b)(1)(A) and explained
that "marital property includes all property owned as of the date of filing of the complaint
for divorce *or* acquired up to the date of the final divorce hearing." (emphasis added). Thus,
we reject Husband's argument that his expenditure of the proceeds prior to the final divorce
hearing necessarily prevented the trial court from classifying such as marital property. ***See***
***Scarbrough v. Scarbrough***, No. E2011-01854-COA-R3-CV, 2012 WL 1980674, at *4
(Tenn. Ct. App. W.S. June 4, 2012) (holding that Wife could not convert worker's
compensation benefits into her own separate property by expending such benefits prior to the
final divorce hearing).

However, we agree with Husband's argument that only a small portion of the
settlement proceeds can properly be classified as marital property. As set out above, recovery
in personal injury can be classified as marital property only insofar as such recovery
represents "wages lost during the marriage, reimbursement for medical bills incurred and
paid with marital property, and property damage to marital property." **Tenn. Code Ann. 36-
4-121(b)(1)(C)**. In this case, the undisputed evidence demonstrates that $3,400 of the
settlement award represented reimbursement for medical bills. Additionally, Husband's tax
returns indicate that Husband earned $13,502 in 2010 and $7,158.00 in 2011 when he was
unable to work for seven months. Thus, it appears that approximately $10,000 of the
settlement award was properly classifiable as marital property. However, because the trial
court deducted an amount greater than this–$13,400.00–as "legitimate expense[s] of the
marriage"–no marital property remains for distribution. Accordingly, we reverse the trial
court's award of $26,300.00 to Wife.

## V. CONCLUSION

For the aforementioned reasons, we reverse the trial court's award of $26,300.00 to Wife. Costs of this appeal are taxed to Appellee, Melinda Jan Metzinger, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.