IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 24, 2014 Session

## CATHY C. PHIPPS v. WILLIAM PHIPPS

**Appeal from the Chancery Court for Claiborne County**
**No. 17660     Hon. Robert M. Estep, Judge[1]**

**No. E2014-00922-COA-R3-CV - Filed January 27, 2015**

In this post-divorce appeal, the husband seeks reversal of the trial court's classification of a certificate of deposit as marital property and the grant of alimony.  We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II., JJ., joined.

David H. Dunaway and Rick A. Owens, Lafollette, Tennessee, for the appellant, William Phipps.

Lee Dan Stone, III, Tazewell, Tennessee, for the appellee, Cathy Phipps.

## OPINION

## I.  BACKGROUND

William Phipps ("Husband") and Cathy Phipps ("Wife") were married in March 1973. Two children were born of the marriage, while a third child was adopted.  All three children have since attained the age of majority.  In January 2012, Wife sought a divorce after nearly 39 years of marriage.  Husband responded by filing a counter-complaint for divorce.

---

[1]Sitting by interchange.

Prior to Husband and Wife's (collectively "the Parties") lengthy marriage, Husband served in the Vietnam War. Husband was in college when he finally met Wife, who worked in the nursing profession. Following their marriage, Wife eventually became a stay-at-home mother. Husband retained various jobs and at one point, operated his own coal mining business, with Wife serving as an administrative assistant. Wife returned to nursing after Husband suffered a heart attack and sold the business. By the time Wife sought a divorce, neither of the Parties were employed. The Parties relied on Husband's disability benefits from the Social Security Administration and Veterans Affairs ("VA") and their significant monetary assets that they had amassed during their lengthy marriage. Husband had also recently received a lump sum award from VA for retroactive benefits a few months before Wife filed her complaint. The benefits, in the amount of approximately $125,399, were awarded as a result of Husband's exposure to Agent Orange during the Vietnam War. The award letter reflects that a portion of the retroactive benefits was attributable to Husband's marriage status. The benefits were automatically deposited into their joint checking account; however, Husband, along with Wife, later purchased a certificate of deposit in the amount of $110,000.

During the pendency of the hearing on the complaint, the court awarded Wife spousal support at the rate of $2,500 a month. Prior to the hearing, the Parties stipulated that statutory grounds existed to support the request for divorce. As pertinent to this appeal, Wife, who was 61 years old at the time of the hearing, testified that she and Husband separated in January 2012. However, she acknowledged that she remained on the property in a garage apartment until March 2012. She stated that she was unable to move until she received spousal support. She explained that shortly before their separation, Husband withdrew approximately $9,000 from their savings account and $4,000 from their checking account, leaving her with approximately $1,000 and no income.

Wife acknowledged that she also withdrew money from the certificate of deposit that they opened after receiving Husband's lump sum benefits from VA. She asserted that she eventually returned the money. She recalled that the retroactive benefits were initially deposited into their joint checking account but that she and Husband later purchased a certificate of deposit. She asserted that Husband decided to purchase a joint certificate of deposit because he believed that she "was a big part in him getting this VA settlement." She stated that he never claimed that the money did not belong to her but that he considered it joint property.

Wife testified that Husband failed to forward her mail to her once she left the residence. She asserted that as a result, she missed the deadline for renewing her nursing license. She stated that she had practiced nursing for approximately 38 years. She acknowledged that at times, she was not employed as a nurse but was responsible for raising

the children and maintaining the home. She returned to nursing in 1993, when Husband had a heart attack.

Wife testified that she suffered from mitral valve prolapse and was required to take medication for her condition. She related that her doctor also found two masses in her right breast and one mass in her left breast. She explained that she underwent breast augmentation surgery in 1980 and that the doctor could not perform a biopsy until the implants were removed. She asserted that she had also been diagnosed with a malignant melanoma and would have to receive continuous treatments for the remainder of her life. She stated that she did not intend to return to the nursing profession or any other profession because of her various health issues.

Wife testified that while she and Husband were married, he drew approximately $8,000 per month from various sources for their living expenses. She related that he drew VA benefits and Social Security benefits and that he also drew $1,500 per month from an annuity. She asserted that her temporary alimony was sufficient to maintain her frugal standard of living, with the exception of her additional medical bills.

As pertinent to this appeal, Husband testified that he was in the Air Force for approximately three years and eight months. He related that upon his discharge, he worked at various places and obtained an engineering degree. He stated that he eventually started his own business, Black Mountain Mining and Burnside Excavating, but that he sold everything approximately three years later when he had a heart attack. He established several retirement and savings accounts throughout the marriage to supplement his income once he retired. He claimed that he suffered from various health issues and that he would probably never work again.

Husband testified that his retroactive VA benefits were automatically deposited into their joint checking account. He purchased a certificate of deposit with Wife because he wanted her to receive the benefits when he died. He explained that he thought he was dying on more than one occasion when his health drastically deteriorated in 2011. He acknowledged that the way in which they purchased the certificate of deposit allowed Wife equal access to the money.

Husband conceded that Wife worked throughout the marriage and also stayed home with the children at times. He admitted that Wife returned to work when he suffered from a heart attack and that she assisted him in obtaining his VA benefits. He claimed that his relationship with Wife had been strained for several years. He acknowledged that a family conflict involving his grandchild was partly to blame for their deteriorating relationship.

Husband testified that his monthly income totaled $6,936. He stated that he recouped approximately $4,156 in VA benefits per month and $1,780 in Social Security benefits per month. He acknowledged that he also withdrew approximately $1,000 per month from another account. He claimed that he no longer depended upon the $1,000 from the separate account because he had been required to remit that money as temporary alimony pending the divorce hearing. He asserted that he also remitted approximately $1,300 per year for homeowner's insurance and $1,500 per year for property taxes. He stated that he was also responsible for remitting payment for Wife's medical insurance. He conceded that he was still able to support himself even after remitting payment for these extra expenses.

Following the presentation of the above evidence, the trial court granted the request for divorce. As pertinent to this appeal, the court classified the certificate of deposit opened with Husband's retroactive VA benefits as marital property as a result of transmutation. The court then divided the marital assets, awarded Wife alimony at the rate of $1,500 per month until she reached the age of 65, and ordered Husband to remit payment for Wife's health insurance until she was eligible for Medicare at the age of 65. This timely appeal followed.

## II. ISSUES

We restate the issues raised on appeal by Husband as follows:

A. Whether the trial court erred in classifying the certificate of deposit as marital property.

B. Whether the trial court erred in awarding alimony to Wife.

Wife raises an issue on appeal for our consideration that we restate as follows:

C. Whether the trial court erred in setting the rate and duration of the alimony award.

## III. STANDARD OF REVIEW

The factual findings of the trial court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

-4-

The trial court's classification and division of property is reviewed de novo with a presumption that the trial court's factual findings are correct. *See Watters v. Watters*, 959 S.W.2d 585, 588 (Tenn. Ct. App. 1997). An appellate court may alter the trial court's division of property only if the trial court misapplies the law or if the evidence preponderates against the trial court's factual findings. *See Wade v. Wade*, 897 S.W.2d 702, 715 (Tenn. Ct. App. 1994). We must give great weight to the trial court's decisions in dividing marital assets, and "'we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007) (quoting *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996)).

Likewise, trial courts have broad discretion in awarding spousal support. *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). "Accordingly, '[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes.'" *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Id.* at 733. Thus, an appellate court must review a trial court's decision regarding alimony using the deferential abuse of discretion standard. *See Bratton*, 136 S.W.3d at 605. If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV. DISCUSSION

### A.

Husband argues that his retroactive VA benefits were not subject to division by the trial court because his benefits were never transmuted into marital property. He explains that he purchased a certificate of deposit with the VA funds solely to ensure that the funds would transfer to Wife in the event of his death. He notes that he did not transfer the amount that was attributable to Wife, namely $15,399, because he sought to separate his benefits from Wife's portion. Wife responds that Husband failed to present evidence indicating an intent that the property should remain separate when the property was used to purchase a joint certificate of deposit that allowed her equal access.

Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate or marital property before

dividing the marital estate. *See generally* Tenn. Code Ann. § 36-4-121(a)(1); *see Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). The classification of property as either marital or separate property is a question of fact for the trial court. *Mitts v. Mitts*, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000).

Separate property is not part of the marital estate and is therefore not subject to division. *See Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). Separate property is defined as,

> (A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 as amended;
>
> (B) Property acquired in exchange for property acquired before marriage except when characterized as marital property under subdivision (b)(1);
>
> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);
>
> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent;
>
> (E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and
>
> (F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2). In contrast, "marital property includes all property owned as of the date of the filing of the complaint for divorce or acquired up to the date of the final divorce hearing." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 233 (Tenn. 2010); *see* Tenn. Code Ann. § 36-4-121(b)(1). Marital property also

> includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

Tenn. Code Ann. § 36-4-121(b)(1)(B). "[S]eparate property can become part of the marital estate due to the parties' treatment of the separate property." *Eldridge v. Eldridge*, 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). "The doctrines of transmutation and commingling provide an avenue where separate property can become marital property." *Id.*

This court has stated that

> [transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988) (internal citations and quotations omitted).

While the retroactive VA benefits were awarded for Husband's service prior to the marriage, Husband used the funds to purchase a joint certificate of deposit with Wife, thereby creating a rebuttable presumption that the certificate of deposit was marital property. Husband argues that he only intended for the funds to transfer to Wife upon his death. However, the certificate of deposit allowed Wife equal access to the money throughout Husband's lifetime and required both signatures for either party to access the money. *Cf. Burns v. Burns*, No. 01-A-01-9705-CH-00218, 1997 WL 691533, at *4-5 (Tenn. Ct. App. Nov. 7, 1997) (holding that a certificate of deposit was the husband's separate property when the husband evidenced an intent to only relinquish control of the certificate upon his death). Husband simply submitted no evidence to establish that he ever intended to keep the retroactive VA benefits as his separate property during the marriage. On the contrary, Husband's intent to keep the benefits as his separate property surfaced only after the demise of the marriage. *See Gorbet v. Gorbet*, No. W2011-01879-COA-R3, 2012 WL 4847090, at *11 (Tenn. Ct. App. Oct. 11, 2012) (holding that property purchased in anticipation of the marriage and later used as the marital residence was marital property). Accordingly, the evidence supports the determination of the trial court that the certificate of deposit purchased with the VA benefits was marital property.

## B. & C.

Husband argues that the trial court erred in awarding Wife alimony when she is fully capable of supporting herself with her nursing degree and the significant monetary assets she received as a result of the divorce. He claims that he, unlike Wife, is unable to work as a result of his permanent and total disabilities. Wife responds that the court erred in setting the rate and duration of her alimony. She requests alimony at the rate of $3,000 per month until she reaches the age of 66, the age at which she will be eligible to draw full benefits from the Social Security Administration.

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th ed., as

[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced. Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. Each type addresses a specific need. The trial court in this case awarded transitional alimony. Transitional alimony may be awarded to assist the disadvantaged spouse in adjusting to the economic consequences of the divorce. Tenn. Code Ann. § 36-5-121(g)(l).

In determining whether to award alimony, the court must first consider whether the spouse seeking alimony is economically disadvantaged. *Perry*, 114 S.W.3d at 467. "Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." *Id.* at 467. In setting the type, duration, and amount of support, courts are guided by the following list of factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

-8-

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

In addition to the factors found in Tennessee Code Annotated section 36-5-121(i), the two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342. When considering these two factors, the primary consideration is the disadvantaged spouse's need. *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). Courts must also take into consideration the different roles a spouse may have in a marriage when considering an award of alimony. Tenn. Code Ann. § 36-5-121(c). "There are no hard and fast rules for spousal support decisions, and such determinations require a 'careful balancing' of the relevant factors." *Miller v. Miller*, No. M2002-02731-COA-R3-CV, 2003 WL 22938950, at *3 (Tenn. Ct. App. Dec. 10, 2003) (citing *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998)).

A number of the support factors weigh in favor of affirming the alimony awarded to Wife. Wife was clearly educated, but she needed additional education to update her nursing license. Unlike Husband, she lacked funds from sources other than her division of the marital property to sustain her. Tenn. Code Ann. § 36-5-121(i)(1), (2). The marriage was of a long duration, namely 39 years. Tenn. Code Ann. § 36-5-121(i)(3). Wife also made substantial contributions to the marriage as a homemaker and as Husband's caretaker throughout the marriage. Tenn. Code Ann. § 36-5-121(i)(10). The remaining factors appear equally weighted or inapplicable. Indeed, the Parties were both nearing retirement age and suffered from numerous physical ailments. However, the record reflects that Wife was economically disadvantaged as compared to Husband and in need of support. Wife testified that she was unable to support herself without assistance from Husband and that she was even unable to leave the residence until she was awarded spousal support. Despite his disability, Husband had additional sources of income, thereby providing him with the ability to support Wife. Accordingly, we conclude that the trial court did not abuse its discretion in awarding transitional alimony to Wife. This conclusion does not end our inquiry because Wife requests an increase in the rate and duration of her award.

While Wife is economically disadvantaged as compared to Husband, she, like Husband, received a significant portion of the marital estate. Husband was also tasked with remitting payment for Wife's medical insurance until she is eligible for Medicare at the age of 65. Unlike Husband, Wife is likely capable of seeking some form of employment if necessary to sustain her before she is eligible for full benefits from the Social Security Administration. With these considerations in mind, we further conclude that the trial court did not abuse its discretion in awarding $1,500 to Wife until she reached the age of 65.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed one-half to the appellant, William Phipps and one-half to the appellee, Cathy Phipps.

_____
JOHN W. McCLARTY, JUDGE

-10-