IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2020

## LORI ANN AMACHER v. STANLEY DWIGHT AMACHER

**Appeal from the Chancery Court for Franklin County**
**No. 19-796        Melissa T. Blevins-Willis, Judge**

_____

### No. M2019-02251-COA-R3-CV
_____

This is a divorce case. Appellant Wife appeals the trial court's division of property, arguing that the court erred in: (1) classifying the appreciation of her separate property as marital property; (2) excluding from the marital estate certain real property that Husband transferred to his father; (3) not finding that Husband dissipated the marital estate; and (4) inequitably dividing the estate. Wife argues that alimony *in solido* should have been granted in light of the inequitable division and that she should have been awarded her attorney's fees. Wife also requests attorney's fees incurred in this appeal. We affirm the trial court's exclusion of the transferred property from the marital estate. We also conclude that Wife failed to prove dissipation by a preponderance of the evidence. However, we vacate the property division and remand for additional findings of fact with respect to the appreciation of Wife's separate property, and for a reconsideration of the property division. The reconsideration of the property division necessitates a reconsideration of alimony; thus, we vacate the trial court's denial of alimony *in solido* and remand for proceedings consistent with this opinion. We award Wife's attorney fees for this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

C. Kelly Wilson, Shelbyville, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the appellant, Lori Ann Amacher.

Robert S. Peters, Winchester, Tennessee, for the appellee, Stanley Dwight Amacher.

# OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

Appellant Lori Ann Amacher ("Wife") and Appellee Stanley Dwight Amacher ("Husband") were married on September 14, 1981. Two children were born to the marriage, both of whom had reached the age of majority before the filing of the complaint for divorce.

Less than a year before Husband and Wife married, Husband formed A&M Corporation ("A&M" or "the Corporation"), a general contracting company that primarily works in pipeline and utility construction.[1] Husband is licensed as a municipal and utility contractor. Prior to the marriage, Wife completed a program of study at the Cumberland School of Medical Technology and worked as a lab technician in a hospital until 1981. She testified that, after the marriage, Husband did not want her to continue working outside the home so that she could be a stay-at-home mother. Wife did work for A&M, however, preparing bids, managing payroll, and performing other administrative tasks. The parties had a good quality of life during their marriage, traveling frequently and purchasing luxury items, such as a small airplane and a $150,000 Gulfstream coach.

Husband testified that the parties had been living separately for about a year prior to Wife's filing for divorce in 2014, and they had lived separately for the five or six years preceding the trial. During the separation, Husband continued living in the marital home, a 227-acre farm. He testified that he essentially ended operation of A&M at the end of the 2014 fiscal year, citing difficulty in obtaining bonds due to the divorce and increased costs. At the time of the hearing, Husband was farming. Wife purchased a home after the parties separated. With some contribution from Husband, Wife renovated this property. Wife's income is generated by rental properties. The parties' have a marital estate of over $2 million dollars.

There were several delays between the filing for divorce and the trial. On Wife's motion, the trial court set hearings in February and September 2015 on Husband's failure to file full and complete responses to the Interrogatories and his failure to file full and complete responses to requests for production of documents. The following year, in September 2016, the trial court appointed a special master to marshal, inventory, and appraise the parties' assets; the trial court adopted the special master's report, which determined the values of most of the parties' property. A trial on the divorce complaint was held on May 9, 2019, at which Husband, Wife, the parties' son, Josh Amacher, and expert witness, David Brown, CPA, testified. Husband's testimony from depositions

---

[1] At the time of incorporation, Husband and Phillip McAfee were each 50% shareholders; after a short time, the two ended their business relationship, and Husband became the sole shareholder.

taken in March 2016 and March 2018 was entered into evidence, as was the deposition testimony of Pam Spencer, bookkeeper for A&M. The parties stipulated that both had grounds for divorce. The trial court entered its final order on November 25, in which it awarded Husband: (1) the marital residence, valued at $1.2 million; (2) the $48,000 cash value of his life insurance policy; and (3) personal property valued at $243,450 to account for Husbands "premarital investment" in A&M. The Wife received: (1) her home as separate property, along with its appreciation of $156,000, which the trial court deemed marital property; (2) rental and commercial properties valued at $275,000; (3) bank stock valued at $235,000; and (4) assorted vehicles. The trial court ordered Husband to pay Wife's health insurance (up to $1,000 per month) as transitional alimony until March 31, 2020. The trial court denied Wife's request for alimony *in solido*, including attorney's fees. Wife appeals.

## II. ISSUES

Wife raises the following issues for review:

1. Whether the trial court abused its discretion in the division of marital property, which inequitably favors Husband as well as by[:]

   a. improperly classifying the appreciation in value of Wife's home as marital property,
   b. excluding the Lincoln Road rental property that Husband conveyed to his father shortly before the divorce, and
   c. not deducting Husband's dissipation of marital property from his share of the marital estate.

2. Whether the trial court abused its discretion in failing to award alimony to Wife based upon the statutory factors and in order to render the division of marital property equitable.

3. Whether the trial court abused its discretion in failing to award attorney's fees to Wife based upon her financial need as well as because of Husband's evasive and dilatory conduct which increased the cost of litigation.

4. Whether Wife should be awarded attorney's fees incurred on appeal.

Husband asks that the trial court be affirmed in all respects and raises no additional issues on appeal.

### III. STANDARD OF REVIEW

Because this case was tried by the trial court, sitting without a jury, we review the trial court's findings of fact *de novo* on the record of the trial court, accompanied by a presumption of the correctness of these findings, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); ***Kelly v. Kelly***, 445 S.W.3d 685, 691-92 (Tenn. 2014). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." ***Hardeman Cnty. v. McIntyre***, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citing ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005)). With respect to the trial court's conclusions of law, our review is de novo with no presumption of correctness. ***Kelly***, 445 S.W.3d at 692.

### IV. ANALYSIS

### A. Division of the Marital Estate

Wife raises several issues under the umbrella of property division. We will first address the question of whether the trial court erred by designating the appreciation of Wife's home as marital property.

### 1. Classification

Tennessee is a "dual property" state because its domestic relations law recognizes both martial and separate property. ***Larsen-Ball v. Ball***, 301 S.W.3d 228, 231 (Tenn. 2010). Because separate property is not subject to division, in making a property division in a divorce, the trial court must first classify property as marital or separate property then divide the marital property equitably. ***Larsen-Ball***, 301 S.W.3d at 231. The classification of an asset as marital or separate property is a question of fact. ***Stratienko v. Stratienko***, 529 S.W.3d 389, 398-99 (Tenn. Ct. App. 2017). Accordingly, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. *See* Tenn. R. App. P. 13(d).

### a. The appreciation in the value of Wife's home

Wife argues that the trial court erred in classifying the appreciation of Wife's home on Country Club Drive ("the Country Club home") as marital, rather than separate, property.

The appreciation in value of a spouse's separate property can become marital property where both spouses have substantially contributed to its preservation and appreciation. Tenn. Code Ann. § 36-4-121(b)(1)(B). "The contributions may be direct or indirect, but must be 'real and significant'" and "there must be some link between the spouses' contributions and the appreciation in the value of the separate property." ***Keyt v.***

- 4 -

*Keyt*, 244 S.W.3d 321, 329 (Tenn. 2007). Whether a spouse made substantial contributions to the preservation and appreciation of separate property is a question of fact." *Mitts v. Mitts*, 39 S.W.3d 142, 145 (Tenn. Ct. App. 2000).

In her list of disputed marital assets, Wife set the value of the Country Club home at $268,000, and Husband does not dispute this value.[2] She purchased the home for $130,000 in 2015, after the parties separated, and it is titled solely in her name. The trial court classified the Country Club home as Wife's separate property because she paid for it using her separate property; this finding is supported by Wife's testimony that she borrowed the purchase price against a certificate of deposit given to her by her father. *See* Tenn. Code Ann. § 36-4-121(b)(2)(D); *Keyt*, 244 S.W.3d at 328 n. 7 (Tenn. 2007). The evidence does not preponderate against the trial court's finding that the Country Club home is Wife's separate property, and the only issue on appeal is the designation of the appreciation as marital property.[3] Wife used an additional $60,000 of her separate property to renovate the home,[4] for a total investment, by Wife, of $190,000 for the purchase and improvement of the Country Club home. Wife stated that she hired a designer and workers to remodel the home. She also offered into evidence a ledger showing payments, totaling $15,783.41, that Husband made toward the remodeling expenses. Husband's testimony was that he "kind of designed" and spent $20,000 toward the improvements.[5]

---

[2] In her brief, Wife transposes some of the numbers, listing the value as $286,000. This affects the computations in her brief.

[3] At trial, Husband did not dispute that the Country Club home itself is Wife's separate property. Husband testified:

Q. [A]s far as you are concerned, you are not making any claim to that house, except for the appreciation and the amount that you have put into it; isn't that right?
A. Right.

On appeal, Husband seems to assert that the entire value of the home is marital property. However, at the trial level, Husband presented no evidence to dispute that the Country Club home was purchased with Wife's separate property. Furthermore, Husband does not raise a specific issue asserting that the entire value of Country Club home is marital property. As such, we will not address his assertion that the entire value of the Country Club home is marital property and will address only the classification of the appreciation on the property. *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) (stating that "[i]ssues not raised in the trial court cannot be raised for the first time on appeal"); Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.")

[4] This $60,000 was part of Wife's proceeds from the sale of some duplexes owned by the parties. Husband and Wife each received $72,000 as their separate property from the sale, and Husband does not dispute that the parties' respective proceeds from the sale of the duplexes are separate property.

[5] At trial, Husband testified, "I've got over $20,000 worth of bills sitting right over there on that desk," but those bills were not entered into evidence.

A trial court's "findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Cain-Swope v. Swope*, 523 S.W.3d 79, 86 (Tenn. Ct. App. 2016) (citation omitted). The trial court made no findings of fact regarding the Country Club home in its order. The trial court's Assets and Liability Division (Exhibit A to the order) shows appreciation in value of $156,000, which the court deemed marital property. It is unclear how the court arrived at that specific number. In addition, the court credited Husband with a contribution of $15,783.00, the amount of money that he spent on improvements to the Country Club home as documented by the ledger entered into evidence by Wife; yet, the trial court failed to credit Wife with the $60,000 in separate property she used in renovating the home. Furthermore, there is no evidence from which to trace the funds spent by Husband to his separate property. Regardless of whether the money expended by Husband was marital or separate property, crediting him with the dollar amount of his contribution, without subtracting that amount from the appreciation, resulted in a "double-dipping" for the Husband.

If the trial court fails to explain the factual basis for its decisions, the appellate court may remand the case with instructions to make the requisite findings of fact and conclusions of law and enter judgment accordingly. *Cain-Swope*, 523 S.W.3d at 86. The trial court made no factual findings to explain its determination that the increase in value of the Country Club home is marital property; accordingly, we remand for factual findings and reconsideration of this issue. On remand, the trial court shall: (1) make a determination of whether both spouses have substantially contributed to the appreciation, as required by Tennessee Code Annotated § 36-4-121(b)(1)(B); (2) indicate what facts support that conclusion; (3) determine whether Husband's financial contribution to the Country Club home was from marital or separate property; (4) include Wife's $60,000 expenditure in the analysis; (5) show the basis for determining the appreciation of the Country Club home; and (6) set forth any other facts underlying its determination as to whether the appreciation is marital or separate property. To this end, the trial court may reopen proof.

b. The Lincoln Street Property

We next consider Wife's argument that certain property that Husband transferred to his father prior to the Wife's filing for divorce should be included in the marital estate. The property, located on West Lincoln Street, consists of three commercial buildings that are rented for income ("the Lincoln Street property"). Wife characterizes the transfer as a "sham transaction" because Husband "retained all indicia of ownership;" as such, she argues that the Lincoln Street property should be classified as marital property." With respect to the Lincoln Street property, the trial court found:

Testimony was also offered relative to a commercial building located at West Lincoln Street in Tullahoma that Husband's father held for 30 or more years before he conveyed it to [Husband]. Though this building was deeded to Husband during the marriage, Husband's name alone was on the deed. At the time Husband received the building from his father, he testified that he had a promissory note with his father but after three years, he made no payments on the note. Though Wife argued that Husband deeded the property back to his father due to this divorce proceeding, it does not negate the appearance that this property was treated as a gift to Husband from his father. There was insufficient testimony relative to significant contributions by Wife to this property. Based on the foregoing, the Court does not find the value of the building to be appropriate for division.

Husband and Wife both testified regarding the Lincoln Street property.[6] According to Husband's testimony, in or around 2011,[7] he purchased the property from his father, who carried the note for $250,000. In his March 2016 deposition, Husband testified that he did not make payments on the note; however, at trial, Husband testified that he paid for one year. When he could not afford to continue payments after losing his "biggest renter," Husband deeded the property back to his father. Wife testified that after Husband transferred the property back to his father, Husband still collected rent, which he deposited into the account used for Husband's and Wife's other rental income. Wife further stated that Husband paid insurance and property taxes on the Lincoln Street property. In his March 2016 deposition, Husband testified that he still managed the property for his father. Husband's testimony that he managed the property for his father is consistent with collecting and depositing rental payments and paying insurance and taxes. Therefore, the evidence, though limited, does not preponderate against the trial court's finding that the Lincoln Street property was not part of the marital estate. Accordingly, we affirm the trial court in this regard and turn to the court's division of the marital estate.

## 2. Division

Marital property must be divided equitably based on the relevant statutory factors, without regard to fault. *See* Tenn. Code Ann. § 36-4-121(a)(1).[8] A division of marital

---

[6] Husband's father was not joined as a third party, nor did he testify.

[7] Husband testified in the March 2016 deposition that he purchased the property "probably" in the last five years. He also stated that there was a land sale contract, promissory note, and an amortization schedule, none of which are in the record. There are no deeds for the property among the several deeds in the record.

[8] The statutory factors, at the time Wife filed for divorce, were:

- 7 -

property in an equitable manner does not require that the property be divided equally. *Larson-Ball*, 301 S.W.3d at 231.[9] On appeal, we give "great weight to the trial court's division of marital property and are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Id.* at 234 (quotation marks and citations omitted). As we have explained:

---

(1) The duration of the marriage;
(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
(4) The relative ability of each party for future acquisitions of capital assets and income;
(5) (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.
(6) The value of the separate property of each party;
(7) The estate of each party at the time of the marriage;
(8) The economic circumstances of each party at the time the division of property is to become effective;
(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
(10) The amount of social security benefits available to each spouse; and
(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code. Ann. § 36-4-121(c) (2011). Our Supreme Court has "encourage[d] trial courts to make specific findings of fact with respect to each statutory factor enumerated in Tennessee Code Annotated section 36-4-121(c) to aid in the disposition of cases on appeal." *Larsen-Ball*, 301 S.W.3d at 235 n. 4. We respectfully repeat this encouragement.

[9] Wife erroneously asserts that "it is presumed that an equal division is an equitable division." She cites *Bookout v. Bookout*, 954 S.W.2d 730 (Tenn. Ct. App. 1997), as support and arguing that "[the] presumption has not been rebutted in this case." Respectfully, Wife misinterprets the holding in *Bookout*. Contrary to Wife's position, in *Bookout*, this Court stated that no such presumption exists:

The appellant argues that there is "a very strong presumption favoring equal division" of marital assets. . . . We find no such presumption. There is, however a presumption that marital property is owned equally.

954 S.W.2d at 731.

[I]t is not our role to tweak the manner in which a trial court has divided the marital property. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable.

*Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007) (citations omitted).

    a. <u>Dissipation</u>

Wife argues that the trial court erred in failing to find that Husband dissipated marital assets by: (1) transferring proceeds from the sale of corporate assets in the amount of $150,000 to his son, Josh Amacher, approximately eight months before Wife filed for divorce; and (2) by borrowing money from A&M.

The dissipation of marital or separate property is a factor that courts shall consider when making an equitable division of marital property. Tenn. Code Ann. § 36-4-121(c)(5)(A). Dissipation is statutorily defined as "wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed." Tenn. Code Ann. § 36-4-121(c)(5)(B). The Tennessee Supreme Court has explained:

Dissipation of marital property occurs when one spouse wastes marital property and thereby reduces the marital property available for equitable distribution. Dissipation typically refers to the use of funds after a marriage is irretrievably broken, is made for a purpose unrelated to the marriage, and is often intended to hide, deplete, or divert marital property. In determining whether dissipation has occurred, trial courts must distinguish between dissipation and discretionary spending. Discretionary spending might be ill-advised, but unlike dissipation, discretionary spending is typical of the parties' expenditures throughout the course of the marriage.

*Larsen-Ball*, 301 S.W.3d at 235 (quotation marks and citations omitted). The party alleging dissipation carries the initial burden of production and the burden of persuasion at trial. *Id.* "A spouse who seeks to prove dissipation must do so by a preponderance of the evidence." *Watson v. Watson*, 309 S.W.3d 483, 491 (Tenn. Ct. App. 2009).

    *i. $150,000 Transfer to Josh Amacher*

We will first examine the $150,000 that Wife alleges was transferred in 2014 by Husband from A&M to the parties' son, Josh Amacher. Josh Amacher testified at trial

that he never received $150,000 from the Corporation. According to his testimony, he was "on" an account that was used for corporation expenses because he worked for the Corporation for seventeen years. He made phone transfers from that account when he needed to pay expenses for business projects, mostly for "emergency purposes." This kept him from having to pay from his own money and then seek reimbursement. He testified that did not know whether a $150,000 deposit was made to that account, and he never saw the statements for that account. Husband testified that he did not give $150,000 to Josh Amacher; rather, he stated that the disputed funds were deposited in an account that was held jointly by his son and him. According to Husband, the $150,000 was a loan from A&M. He stated that because Wife had been "threatening and unstable," he transferred the money from the Corporation to a personal account "to keep her from absconding with it." Husband testified that he used the money to pay bills. In his March 2018 deposition, Husband stated, "That's why you got the . . . bank statements right there. You can look and see where it went." The bank statements were entered as an exhibit to the deposition, but are not part of the record on appeal. There is no other evidence to show for what purpose(s) the $150,000 was used.

The trial court made no specific determination as to whether there was dissipation. However, the evidence does not preponderate against the trial court's conclusion that "Husband's testimony was not impeached that he used the money to pay family bills, and the parties' son denied the receipt of funds for his use." Moreover, from our review, we conclude that Wife did not meet her burden to show dissipation by a preponderance of the evidence. *See **Watson***, 309 S.W.3d at 491.

### ii. Loans from A&M to Husband

According to the A&M balance sheet, Husband owed approximately $33,000 to the Corporation from 2005 to 2018.[10] In 2014, the year Wife filed for divorce, that number increased to $330,421.71.[11] While this drastic increase, coupled with the timing, raises questions concerning the purpose of the loans, there is no evidence concerning how the funds were used. Thus, we conclude that Wife failed to meet her burden at trial to prove dissipation by a preponderance of the evidence. *See **id***. Notwithstanding this fact, the loans are relevant to the issue of the equitable division of marital property insofar as they are assets of the Corporation. We now turn to the question of equitable division.

---

[10] The specific amount fluctuated very little during those years i.e., $32,928.26 was owed from 2005 until 2013. The lack of fluctuation suggests that, although the loan remained outstanding, no interest accrued during this time.

[11] According to Husband's testimony, $150,000 of this amount was deposited in Husband and Josh Amacher's joint bank account.

- 10 -

b. <u>Equitable Division</u>

Wife argues that, regardless of how this Court decides the dissipation issues, the trial court's division of the marital estate was "illogical, contrary to the evidence presented in regard to the statutory factors, and grossly inequitable in favor of the Husband." She argues that, under the facts of this case, an equitable division is an equal division.

A review of the relevant statutory factors establishes the following. The parties had been married approximately thirty-three years at the time of the filing of the complaint for divorce, and they were separated approximately five years during the pendency of the divorce. At the time of the trial, Husband was sixty-two years old, and Wife was sixty-one. Husband testified that he has no significant health problems. Wife has a number of significant health issues, including heart disease, COPD, bladder problems, and anxiety. She has had several surgeries and takes a number of medications for these conditions. Husband worked throughout the marriage in construction and was sole owner of the Corporation. He testified that he recently stopped working in that field and now his income is solely derived from farming and annual dividends from bank stock. Husband reported a net monthly income of $2,000, which the trial court did not find credible.[12] Although Wife has training in the field of medical technology, she has not worked in that field since the parties married in 1981. During the marriage, Wife primarily worked in the home. However, on occasion, she also worked for the Corporation, managing payroll, bookkeeping, scheduling jobs, preparing bids, and performing other tasks related to the administration of the business. Due to her health issues and her years out of the workplace, her capacity to earn a living is minimal. Her current income is from the rental properties owned by the parties. She reports a gross monthly income from the rental properties of $2,550 and reports a monthly shortfall of $1,342.

The trial court divided the personal property of the Corporation between the parties by first assigning property valued at $243,450 to Husband as his separate property—an amount reflecting the value of the Corporation before the marriage (Exhibit B to the trial court's order).[13] Wife's separate property consisted of a CD in the amount of $130,000, a value which is presently subsumed into the Country Club home value, as she borrowed against this CD to purchase the home.

---

[12] In its order, the court stated that Husband's income and expense statement, "failed to set forth adequate information regarding Husband's true income and expenses."

[13] This amount is based on Husband's testimony that he invested approximately $75,000 and had approximately $200,000 worth of equipment at the time he married his Wife in 1981.

The trial court divided the marital estate as follows:[14]

| Assets | Marital value / equity | To Husband | To Wife |
|---|---|---|---|
| Farm | 1,200,000 | 1,200,000 | |
| Rental properties (406 & 410 Oakwood, 522 Noblitt, 704 E. Grundy) and commercial property on Polk St. | 278,000 | | 278,000 |
| Country Club home | 156,000[15] | | 156,000 |
| Contribution by Husband to Country Club home | | | 15,783[16] |
| Cash value of Husband's life insurance | 48,000 | 48,000 | |
| 2001 Gulfstream Motor Home | 30,000 | | 30,000 |
| People's State Bank Stock | 235,000 | | 235,000 |
| Wife's automobile: Maxima (debt) | -12,000[17] | | |
| 1994 Jaguar | 1,000 | | 1,000 |
| 2005 Lincoln | 5,500 | | 5,500 |

Based on the above, the trial court valued the divisible marital estate at $1,941,500. The trial court divided the marital estate such that Husband received assets valued at

[14] This information is from the Asset and Liability Division, identified as Exhibit A to the trial court's order. With the exception of the marital value of the Country Club home, the parties stipulated to these values.

[15] The value of marital equity is to be reconsidered on remand.

[16] Whether these are separate funds or to be considered part of the appreciated value of the Country Club home is to be reconsidered on remand.

[17] It is not entirely clear to this Court, but our examination of Exhibit A suggests that the $12,000 debt on Wife's Maxima is assigned to the Wife. If there is no equity value in the automobile, this further reduces the value of Wife's portion of the marital estate.

$1,248,000 (64 percent of the estate). Wife received assets that the trial court valued at $721,283, although that amount should have been reduced by $15,783 to account for the trial court's determination that Husband's contribution to the real property should be treated as an asset assigned to Wife. As such, Wife nets $705,500 in marital property (36 percent of the estate).[18]

While a division of property is not rendered inequitable simply because it is not mathematically equal, *Larson-Ball*, 301 S.W.3d at 231, we are of the opinion that, based on the statutory factors, a division somewhat closer to equal division of the marital estate would be more appropriate and equitable given the: (1) the length of the marriage; (2) the value of the parties' separate property; (3) Wife's limited earning power; and (4) her monthly shortfall.[19] With regard to the equity of the allocation of marital estate, the trial court explained:

> The appraisal of the farm was stipulated at $1,200,000.00; this causes an appearance of unequal allocation of the marital equity. However, the Court does not find this to be the case. There is tax debt not considered because an accurate value of the tax liability was not established despite expert testimony, for which Husband will be responsible. In addition, Husband is receiving property with no evidence presented regarding the marketability of the property should he choose to liquidate the same. Additionally, Wife testified that she did not want the property. The proof was simply that the land was appropriate for farming. With Wife's receipt of her home, all rental/commercial properties (except the value of the West Lincoln property, which is addressed below) and denial of Husband's claim for 100% of value of the home being marital,[20] she is receiving a greater investment with monthly income.

From the record, it is unclear how the trial court concluded that Wife received a greater "investment" when no evidence was presented regarding the tax liability or the "marketability" of the property. As such, we conclude that there is insufficient evidentiary support for the trial court's conclusion. *See Larson-Ball*, 301 S.W.3d at 231.

We recognize that, in certain regards, the parties did not present the most complete evidence. Nonetheless, we conclude that the connection between the evidence and the trial court's conclusions are unclear at times, and its order is incomplete in some respects.

---

[18] These calculations do not include the value of A&M property.

[19] The trial court correctly considered that Wife was assigned income-generating property, but the court's order does not show that it considered that the income was not sufficient to meet Wife's expenses.

[20] It is unclear to us to what "denial" this refers. Husband did not, at the trial level, claim that 100 percent of the Country Club home was marital. *See supra* note 3.

As we have previously determined, remand is needed to make factual findings regarding the Country Club home. We further conclude that, on remand, the trial court should re-examine and reiterate its findings with respect to the Corporation.

The trial court found that the Corporation was marital property, stating:

> *CAO Holdings, Inc. v. Trost*, 333 S.W. 3d 73[, 89 n. 13 (Tenn. 2010)], set forth 12 factors to be considered in determining whether to disregard the corporate veil. Of these factors, this Court placed great weight upon the following: the non-issuance of stock certificates; the sole ownership of stock by one individual; the use of the same office or business location; the employment of the same employees or attorneys; the use of the corporation as an instrumentality or business conduit for an individual or another corporation; and the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another.

The evidence supports the trial court's piercing of the corporate veil and its finding that the Corporation was marital property.[21] Husband testified that he was the sole shareholder. Wife's and Josh Amacher's undisputed testimony was that they had no control of corporate funds. The evidence shows that the line between personal and corporate expenses was unclear. Both Husband and Wife testified that when Husband needed money, he would borrow it from A&M. Pam Spencer was the bookkeeper for A&M as well as the parties' personal bookkeeper.[22] Her testimony exposed a pattern of transfers between Husband and A&M that were indicated as loans in the Corporation's books, with no interest, amortization schedule, or any sort of repayment agreement. Ms. Spencer testified that Husband's and Wife's personal credit cards were sometimes paid from the Corporation. Husband, at one point, traded a corporation-owned vehicle on the purchase of a new vehicle titled to him personally; this transaction was then added to the Corporation's books as a loan to Husband. CPA David Brown testified that this was not standard accounting practice for corporations and, indeed, "not []acceptable under any accounting standard."[23] The Corporation's balance sheet shows a sharp uptick in loans to Husband beginning in 2014, the year Wife filed for divorce. It is not at all clear from

---

[21] Husband argued at trial that the Corporation was not marital property, but did not raise the issue on appeal. We address the question here briefly for the sake of context.

[22] However, Ms. Spencer did not prepare tax returns for the Corporation nor for the Amachers personally, nor did she give tax advice.

[23] Mr. Brown was admitted as an expert witness for Wife, without objection from Husband.

the record the purpose of those loans, and the trial court found that "Husband's testimony was evasive with regard to his corporate finances."[24]

In accordance with the foregoing, the trial court found "that all personal property [of A&M] is marital for purposes of division." The trial court, having assigned a portion of the Corporation as Husband's separate property, as explained above, divided the remaining corporate property, listed on Exhibit C, "in kind," which the trial court explained, "will be accomplished by alternating choice. Wife will receive the first choice, Husband receiving the second then moving forward in the same manner until no personal property remains." However, despite having pierced the corporate veil, the trial court did not include, as part of the marital estate, the Corporation's other assets, such as the $67,834 checking account balance, as shown on the A&M Balance sheet (designated as Trial Exhibit 13), or the debts owed to the Corporation. The trial court did address the corporate liabilities, finding that it was equitable for the Husband to be solely responsible for the financial liabilities of the Corporation. The single liability, according to the balance sheet, is a debt owing to Husband, in the amount of $64,000. We cannot identify in the trial court's order the facts that underlie its decision to divide only the tangible property and not the Corporation's receivables and cash accounts. In the absence of any explanation, we conclude that the trial court's decision was illogical; consequently, we remand for reconsideration of the value and the division of the Corporation's financial assets and factual findings to support the trial court's conclusions. *See Owens*, 241 S.W.3d at 490. To this end, the trial court is not precluded from reopening proof.

Based on the foregoing, we vacate the trial court's division of marital property. Due to the need for additional factual findings which will bear on the division, we remand to the trial court for reconsideration in accordance with this opinion.

## C. Alimony

Wife argues that the trial court erred by not awarding alimony to render the division of marital property equitable. Wife further argues that the trial court erred in failing to award her attorney's fees based on her financial need and because Husband's "evasive and dilatory conduct . . . increased the cost of litigation."

Trial courts have broad discretion in awarding spousal support. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). "Appellate courts are generally disinclined to second-guess a trial judge's spousal support decision," absent a trial court's abuse of discretion. *Id.* (citation omitted). "Rather, the role of an appellate court in

---

[24] Appellate courts "are required to defer to the trial court's credibility findings, including those that are implicit in its holdings." *Williams v. City of Burns*, 465 S.W.3d 96, 120 (Tenn. 2015) (citing *Richards v. Liberty Mut. Ins. Co.,* 70 S.W.3d 729, 733–34 (Tenn. 2002)).

reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." ***Id.*** All relevant statutory factors in Tennessee Code Annotated § 35-5-121(i) are to be considered by the trial court, but "[t]he need of the recipient spouse and the obligor spouse's ability to pay are the primary considerations in the determination of an award of alimony." ***Id.*** at 110. "[A]n award of attorney's fees in a divorce case constitutes alimony *in solido*," and, thus, is subject to the same considerations as other awards of alimony. ***Gonsewski***, 350 S.W.3d at 113.

In its order, the trial court considered each statutory factor. Based on its findings, the trial court ordered Husband to pay Wife's health insurance, up to $1,000 per month, through March 31, 2020 (i.e., for the four months following the court's order), as transitional support. The trial court also ordered Husband to pay the property taxes on all properties through 2019, as alimony *in solido*. The trial court denied further alimony *in solido* "based on the receipt of income generating assets received by [Wife] in this divorce[, and because] she is receiving the ability to secure timely liquidity through the receipt of bank stock whereas Husband is not." The court further denied an award of attorney's fees, stating "Wife is receiving significant and sufficient assets by this Order to pay her attorney fees."

Among the factors the court must consider in determining awards of alimony are the parties' separate property and the division of marital property. Tenn. Code Ann. § 36-5-121(i)(7), (8). Therefore, in light of our remand to the trial court to reconsider its division of the parties' marital property, the court also must re-consider its award of alimony, including Wife's attorney's fees. On remand, the trial court should consider whether alimony *in solido* is an appropriate remedy to address an inequitable division of marital property. In making its determination, the trial court must make factual findings concerning whether Wife would be forced to deplete assets intended for her future support in order to pay her attorney's fees. *See* ***Owens***, 241 S.W.3d at 496.

### D. Attorney's fees on appeal

Wife also seeks to recover her attorney's fees incurred on appeal. Whether to award attorney's fees on appeal is within this court's sole discretion. ***Davis v. Davis***, 138 S.W.3d 886, 890 (Tenn. Ct. App. 2003). When considering a request for attorney's fees, we look at "the requesting party's ability to pay, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other relevant equitable factors." ***Culbertson v. Culbertson***, 455 S.W.3d 107, 158 (Tenn. Ct. App. 2014) (citing ***Moran v. Willensky***, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010)). Taking into account our disposition of this case, the likelihood that Wife will incur additional attorney's fees on remand, and Wife's limited income, we award Wife her attorney's fees for this appeal. We remand to the trial court for a determination of the amount of reasonable attorney's fees incurred on appeal.

## V. CONCLUSION

Based on the foregoing, we vacate the trial court's finding that the appreciation in the value of the Country Club home is marital property; we remand for findings of fact with respect to whether both parties substantially contributed to the appreciated value and any other facts bearing on the resolution of the issue. We affirm the trial court's finding that the Lincoln Street property transferred to Husband's father is not part of the marital estate. We conclude that Wife did not prove dissipation, but that the trial court should consider the debts owed to the Corporation and its other financial assets in dividing the marital property. We, therefore, vacate the division of marital property and direct the trial court to achieve an equitable division and to make additional factual findings to explain the division. As the property division will affect the alimony analysis, we vacate the trial court's alimony award and remand for reconsideration of that issue in light of any adjustments made to the property division. Wife is awarded her attorney's fees incurred in this appeal, and we remand for determination of reasonable fees and entry of judgment on same. Costs of this appeal are taxed one-half to Appellant, Lori Ann Amacher, and one-half to Appellee, Stanley Dwight Amacher, for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE